Ferdinand Henry SCHUTTEN et al., Plaintiffs-Appellants,

v.

**SHELL OIL COMPANY, Defendant-Appellee.**

**No. 27117.**

United States Court of Appeals, Fifth Circuit.

Jan. 30, 1970.

M. Aubrey McCleary, Jr., James S. Holliday, Jr., Baton Rouge, La., Mc-Collister, Belcher, McCleary & Fazio, Baton Rouge, La., for plaintiffs-appellants.

George C. Schoenberger, Jr., Alvin B. Gibson, Winfred G. Boriack, Attys., New Orleans, La., for defendant-appellee.

Before WISDOM, GOLDBERG and CARSWELL, Circuit Judges.

CARSWELL, Circuit Judge:

Appellants filed suit in the District Court seeking to evict the appellee, Shell Oil Company, and seeking an accounting for the removal of oil, gas, and other minerals from land in Plaquemines Parish, Louisiana. Appellants, who are not in possession, claim ownership of the land and demand an accounting from Shell because of its failure to deal with appellants in removing the minerals.

Appellee filed a Motion to Dismiss on the ground that its lessor, the Board of Commissioners of the Orleans Levee District, who also claims title to the land in question, is an "indispensable party"

who cannot be joined since such action would destroy the District Court's diversity jurisdiction. The District Court granted the appellee's motion and dismissed the case.

Both parties agree that if the Levee Board is indispensable to the action the suit would have to be dismissed since both appellants and the Levee Board are citizens of Louisiana and diversity jurisdiction under 28 U.S.C. § 1332 would not be obtainable. Thus the sole issue before this Court is that of the indispensability of the Levee Board.

In deciding this issue it is clear that the provisions of Rule 19 of the Federal Rules of Civil Procedure control. Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1967). Rule 19 provides in pertinent part:

(a) Persons to be Joined if Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring doubt, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

(b) Determination by the Court Whenever Joinder not Feasible. If a person described in subdivision (a) (1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent party being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

The reformation of Rule 19 in 1966 was the result of judicial inequities which had slowly but steadily grown under the concept of the "indispensable" party. The reform of Rule 19 was preceded by more than a decade of scholarly inspection and debate.[1] Under its predecessor, it was often held that absence of an "indispensable" party deprived the court of any power to render relief to the parties before it. See Young v. Powell, 179 F.2d 147 (5th Cir. 1950). The 1966 revision of Rule 19 sought to give the courts greater latitude in deciding whether a case should be dismissed for nonjoinder of a supposedly "indispensable" party. Before discussing Rule 19, and the present controversy, a look at the origin and development of the doctrine of "indispensability" is required in order to properly assess the scope and effect of the 1966 amendment of Rule 19.

Prior to the Federal Rules the biggest problem in litigation over joinder of

1. See e. g., Hazard, Indispensable Party: The Historical Origin of a Procedural Phantom, 61 Colum.L.Rev. 1254 (1961); Reed, Compulsory Joinder of Parties in Civil Actions (pts. 1–2), 55 Mich.L.Rev. 327, 483 (1957).

parties stemmed from the distinction which was required to be drawn between "necessary" and "indispensable" parties. This distinction is set forth in the hoary case of Shields v. Barrow, 17 How. 130, 139, 58 U.S. 130, 139, 15 L.Ed. 158 (1854):

> The court here points out three classes of parties to a bill of equity. They are: 1. Formal parties. 2. Persons having an interest in the controversy, and who ought to be made parties, in order that the court may act on that rule which requires it to decide on, and finally determine the entire controversy, and do complete justice, by adjusting all the rights involved in it. These persons are commonly termed necessary parties; but if their interests are separable from those of the parties before the court, so that the court can proceed to a decree, and do complete and final justice, without affecting other persons not before the court, the latter are not indispensable parties. 3. Persons who not only have an interest in the controversy but an interest of such a nature that a final decree cannot be made without either affecting that interest, or leaving the controversy in such a condition that its final termination may be wholly inconsistent with equity and good conscience. (Footnote omitted).

The Shields v. Barrow formula was a concerted attempt to formalize the joinder doctrines which had arisen in the courts. of equity. Up until the eighteenth century equity required joinder of all interested parties, but recognizing that practical difficulties and obstacles often made this impossible, relaxed its standard of complete adjudication of a controversy when faced with compelling

equity.[2] As noted by Professors Kaplan and Hazard, supra n. 2, equity's attitude changed during the 1700's when the concept of "complete adjudication" gained the upper hand. On the other side of the aisle, the common law had developed joinder criteria which paralleled the parties substantive rights and obligations. The essence of the common law joinder doctrine was that joint rights or obligations demanded joint adjudication.[3] The common law's approach, to say the least, lacked the flexibility of the earlier equity practice.

The rise of the concept of the "complete decree" encroached upon the flexible and rather pragmatic approach to joinder problems which the earlier equity practice had enjoyed and fostered. It was this encroachment which Professor Hazard believes gave rise to the "indispensable" party concept [4] which was formalized in this country in Shields v. Barrow, supra.

In its most favorable light Shields v. Barrow states the proposition that

> "if a court can proceed to a meaningful decree without affecting the interest of the absent person, that absent person is at most a necessary party; if the circumstances are such that the court cannot so proceed, then the absent one is an indispensable party."

Reed, supra n. 1 at 343. While this formulation, as an abstract proposition, is consistent with the present Rule 19, any flexibility or pragmatism envisioned by the Supreme Court in Shields was soon eliminated by courts which latched upon such unguarded words as "separable" and "* * * without affecting that interest * * *" in an attempt to devise a mechanical test to apply to joinder

2. Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv.L.Rev. 356, 359 (1967); Hazard, supra n. 1 at 1256-82. In his article Professor Hazard has done an excellent job of documenting the rise of the indispensability doctrine and its application under equity, common law and the predecessor of the present Rule 19.

3. See Clark, Code Pleading § 56 (2d ed. 1947).

4. See Hazard, supra, n. 1 at 1271-82.

problems.[5] Thus the concept of "severability" arose in equity joinder decisions. As under the common law the substantive rights of the parties became paramount.[6]

To a great extent, the severability test was carried over with the adoption of the original Rule 19. Though those drafting the rule envisioned a more flexible approach akin to that which existed under the "earlier" equity practice, they lost all hope of achieving that end when they resorted to the use of the terms "indispensable" and "joint interest" without redefinition. As pointed out by the Advisory Committee on Rules,[7] the use of these terms

> "directed attention to the technical or abstract character of the rights or obligations of the persons whose joinder was in question, [an approach which characterized the decisions prior to the original rule 19] and correspondingly distracted attention from the pragmatic considerations which should have been controlling."

■ The 1966 amendment of Rule 19 attempts to remedy this situation by conditioning a finding of "indispensability" upon "pragmatic considerations." Provident Tradesmens Bank & Trust Co. v. Patterson, supra, 390 U.S. at 106–107, 88 S.Ct. 733.

Subdivision (a) of Rule 19 categorizes those persons whose joinder is desirable from the standpoint of complete adjudication and elimination of relitigation. If there are no procedural or jurisdictional bars to joining such a party, Rule 19 requires that he be joined. It is to be noted that subdivision (a) eliminates reference to the "abstract" or "substantive" interests involved by avoiding such terms as "joint" and "separable." [8]

■ Subdivision (b) of Rule 19 requires a court to examine four "interests" before deciding whether "in equity and good conscience" the court should proceed without a person whose joinder is impossible. The distilled essence of these "criteria" of subdivision (b) is the attempt to balance the rights of all concerned. See Provident Tradesmens Bank & Trust Co. v. Patterson, supra. The plaintiff has the right to "control" his own litigation and to choose his own forum. This "right" is, however, like all other rights, "defined" by the rights of others. Thus the defendant has the right to be safe from needless multiple litigation and from incurring avoidable inconsistent obligations. Likewise the interests of the outsider who cannot be joined must be considered. Finally there is the public interest and the interest the court has in seeing that insofar as possible the litigation will be both effective and expeditious.

■■ As pointed out by the Advisory Committee, supra n. 7, the term "indispensable" as utilized in the present Rule 19 is not "definitive" but "conclusionary". The term simply denotes a conclusion reached upon due consideration that the person is one who should be joined but whose joinder is impossible and that it is preferable to dismiss the case than to proceed without him. It is to be stressed that the criteria set forth in Rule 19 are not to be applied mechanically nor are they to be used to override compelling substantive interests. As pointed out in Provident Tradesmens Bank & Trust Co. v. Patterson, supra at 119, 125, 88 S.Ct. 733, Rule 19 does not foreclose consideration of substantive interests, it simply acts as a guide to enlightened consideration of those interests. Stated otherwise, sub-

---

5. See Provident Tradesmens Bank & Trust Co. v. Patterson, supra 390 U.S. at 123–125, 88 S.Ct. 733.

6. For applications of the severability test see Halpin v. Savannah River Electric Co., 41 F.2d 329 (4th Cir. 1930); Washington v. United States, 87 F.2d 421 (9th Cir. 1936).

7. See Notes of Advisory Committee on Rules, 28 U.S.C.A. F.R.Civ.P. 19 (as amended 1966).

8. See Notes of Advisory Committee, supra n. 7.

stantive rights are no longer the be all and end all of the joinder question.

In applying Rule 19 the courts must refrain from taking a view either too broad or too narrow in determining "prejudicial" effect of a judgment. The watchwords of Rule 19 are "pragmatism" and "practicality." The court must, however, always consider the possibility of shaping a decree in order to adjudicate between the parties who have been joined. In this vein the court must guard against the formulation of "paper" decrees which neither adjudicate nor, in the end, protect rights.

Considering the present case in the light afforded by Rule 19 we cannot say that the district court erred in dismissing the action and declaring the Levee Board an "indispensable" party.

Under subdivision (a) the Levee Board is clearly a party "to be joined if feasible." Its joinder is impossible, however, since it would destroy the District Court's diversity jurisdiction. Appellants argue that under Louisiana substantive law their action is merely personal against Shell for trespass and that the Levee Board has no "interest" in the action. As pointed out above, the concept of substantive severability is no longer the guiding star of the joinder problem. Nevertheless, a review of the relevant statutory provisions and their interpretation by the Louisiana courts leads us to reject the appellants' argument that the interests of the lessor and lessee of mineral rights are "severable" under Louisiana law. See Le Sage v. Union Producing Co., 249 La. 42, 184 So.2d 727 (1966). It cannot be denied that appellants' action in trespass is based upon its claim of ownership of the land overlying the mineral deposits. This claim is directly opposed to the Levee Board's claim of ownership which is "backed up" by its possession in fact. This question of actual ownership must necessarily be adjudicated before the trespass and accounting issues are reached. There is no doubt that the Levee Board has an interest in this litigation and is a "party to be joined if feasible." Since it is not feasible to join the Levee Board we must now consider what alternatives are available under the "equity and good conscience" standard. To do this we must apply the pragmatic criteria of subdivision (b) of Rule 19.

The first factor that must be considered is the extent to which a judgment might prejudice the unjoined Levee Board or those already parties. Appellants argue that the Levee Board would not be prejudiced because it would not be bound, in the res judicata sense, by any judgment which might be rendered. Nor would the Board be precluded from asserting its rights in another action presumably in Louisiana state courts. We decline to accept the appellants' narrow and technical view of what would constitute prejudice to the Levee Board. It is clear that courts should not proceed simply because the unjoined party is not "bound" in the technical sense. Provident Tradesmens Bank & Trust Co. v. Patterson, supra 390 U.S. at 110, 88 S.Ct. 733. Furthermore, one of the purposes, though not the sole purpose, of Rule 19 is the avoidance of multiple litigation of essentially the same issues.

The possibility of prejudice to the Levee Board is most certainly not superficial. First, if Shell is ousted the Levee Board's royalty interest would cease in practically the same manner as if the court had decreed a cancellation of the lease. This would happen despite the fact that the Levee Board's claim of ownership would be technically unimpaired by the judgment in the sense that it would not be bound by the judgment.

Second, though not technically bound a judgment would most assuredly create a cloud on the Levee Board's title and greatly diminish the value of the property. This result would be adverse to both appellants and the Board and would require yet more litigation. A judgment in favor of the appellants would in effect adjudicate the Levee Board's claim of ownership without giving them the

right to present their defense and assert their own claim on its merits. While Shell does have a substantial interest in the Levee Board's claim this "interest" would not justify placing the burden of proving the Levee Board's ownership on Shell.

Third, a judgment might result in inconsistent obligations for the defendant Shell Oil Company. Furthermore, a judgment in appellant's favor might render the Levee Board liable to Shell for loss or damage for the peaceable possession of mineral rights. See La. Civ. Code Arts. 2692, 2696. Again all of this could come about without affording the Levee Board the opportunity to defend its interests even though the Board would not be bound by the judgment.

A conclusion that as a practical matter the Levee Board would be prejudiced by a judgment rendered in their absence leads us to consider the second and third "factors" of Rule 19: "the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided", and whether a judgment rendered in the Levee Board's absence will be adequate. Appellants have suggested no way in which these objectives could be accomplished and we are unable to discover any ourselves. Since the litigation revolved around the conflicting claims of ownership, we are unable to envision a decree which would effectively settle any controversy between the appellants and the present defendant, Shell, without doing substantial practical injury to the Levee Board's unassertable claims. Any attempt to fashion a judgment which would lessen this harm would result in a meaningless decree.

A judgment rendered at this time and without the Levee Board would simply result in additional costly litigation no matter how such judgment was formulated. This fact leads us to consider the

fourth and final criteria of Rule 19: whether the appellant has an adequate remedy elsewhere. The answer to this question is that appellants will by no means be ·prejudiced themselves if forced to pursue their remedy in the courts of the State of Louisiana. Both the Levee Board and Shell are amenable to process in Louisiana. This litigation concerns land situated in Louisiana, is governed by Louisiana law and involves a claim of ownership asserted by an agency of the State of Louisiana. Appellants cannot ·be heard to complain about the competence of the courts of Louisiana in such matters. There is, however, an even more compelling reason for appellants to seek relief in the Louisiana courts. Even if the district court below could fashion a judgment which was adequate while at the same time protective of unassertable rights, additional litigation would most assuredly develop later in the Louisiana courts. By dismissing the case now and directing the appellants to proceed in the Louisiana courts most if not all issues can be settled in one bout of litigation. As noted above, the expeditious and effective disposition of litigation is desirable if not always obtainable. In the present case it is not only desirable but obtainable and is indeed made necessary under the circumstances.

We therefore conclude that under Rule 19, Federal Rules of Civil Procedure, the present case in all "equity and good conscience" should not proceed without joinder of the Orleans Levee Board. Moreover, this decision is made easier by the knowledge that the courts of the State of Louisiana offer a forum in which a complete adjudication of all interests can be obtained without fear of needless multiple litigation.

The order of the District Court dismissing the complaint for nonjoinder of the Orleans Levee Board is

Affirmed.