S. Gordon **REESE**, Sr., Plaintiff,

v.

**SKELLY OIL COMPANY** et al., Defendants.

Civ. A. No. 1594.

United States District Court, S. D. Mississippi, E. D.

July 13, 1971.

Guy M. Walker, Walker & Sullivan, Laurel, Miss., for plaintiff.

Kenneth Watts, Snow, Covington, Temple & Watts, Meridian, Miss., for defendants Estate of Sam Broadhead, S. Norris Broadhead and Paul E. Broadhead, Executors, Trustees and Individually.

Tally Riddell, Riddell & Dabbs, Quitman, Miss., for defendants John Player, and others.

Dale H. McKibben, Jones & McKibben, Jackson, Miss., for defendants, Skelly Oil Co., and others.

Francis T. Zachary, Zachary, Weldy & Ingram, Hattiesburg, Miss., for defendants, Black Warrior Minerals, Inc., and others.

## MEMORANDUM OPINION

NIXON, District Judge.

This action was filed in this Court based on diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff alleges that he is a resident citizen of the State of Louisiana and is the owner of 14 valid and binding oil, gas and mineral leases covering 53.67 acres of land, located in Clark County, Mississippi, which is presently producing oil. He claims his leasehold interest through various oil, gas and mineral leases executed by some 25 lessors, all of whom claim to be heirs of law of one Dennis Husbands, and in his "Declaration" filed herein, which he contends to be a suit "to cancel clouds on his title", alleges that leasehold and

mineral held by all of the defendants adverse to his interest (as evidenced by a chain of title attached to his "Declaration" and made a part thereof), are invalid for the hereinafter stated reasons, and asks that this Court further order a full and complete accounting of the oil and gas produced from producing wells drilled by the defendant Skelly Oil Company, enter a judgment based on this accounting for such oil and gas produced which he would have been entitled to receive and to award him "all sums of every kind and character by law allowed of and from the defendant, as the evidence might show."

The defendants have filed a Motion to Dismiss or Abate this action pursuant to Rule 19 of the Federal Rules of Civil Procedure on the ground that International Paper Company, the alleged surface owner of the land in question (exclusive of minerals) has not been made a party defendant, and plaintiff's lessors are not parties plaintiff herein, all of whom are "indispensable parties" within the purview of Rule 19; and that the joinder of plaintiff's lessors, many of whom are resident citizens of the State of Mississippi, would destroy this Court's diversity jurisdiction. Plaintiff and defendants agree that if plaintiff's lessors are indispensable to the action within the meaning of Rule 19, that this suit would have to be dismissed since they and most of the defendants herein are citizens of Mississippi, and thus diversity jurisdiction under 28 U.S.C. § 1332 would not be obtainable. Therefore, the threshold issue before this Court is that of the "indispensability" of the lessors or grantees of plaintiff within the meaning of Rule 19 of the Federal Rules of Civil Procedure and the case law which has construed this Rule which was

amended by being completely rewritten in 1966.[1] This Rule was rewritten "to eliminate formalistic labels that restricted many courts from an examination of the practical factors of individual cases." Accordingly, the time honored categories of "indispensable", "necessary", and "proper" have been discarded and that portion of the text in the main volume which defines them is no longer relevant or applicable.[2]

Federal, rather than state, law governs by modern analysis which regards compulsory joinder as a discretionary matter, dependent on a realistic analysis of the facts of each case, rather than as a matter governed by conceptional classifications of the interest of the parties. Provident Tradesmens Bank & Trust Co. v. Patterson, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). In the *Provident Bank* case, the United States Supreme Court emphasized the necessity of weighing the factual situation presented in each particular case in light of the factors enumerated in Rule 19 and all other relevant factors. It further stated that a court cannot know whether a particular person is "indispensable" until it has examined the situation and determined whether it can proceed without him. 390 U.S. at 119, 88 S.Ct. 733. The present Rule 19 of the Federal Rules of Civil Procedure reads as follows:

"(a) Persons To Be Joined If Feasible. A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the ac-

1. See 2 Barron & Holtzoff, Federal Practice & Procedure, 1970 Pocket Part, p. 3, fn. 99.

2. Cohn, The New Federal Rules of Civil Procedure, 1966, 54 Geo.L.J. 1204; Kaplan, Continuing Work of the Civil Com-

mittee: 1966 Amendments of the Federal Rules of Civil Procedure (I), 1967, 81 Harv.L.Rev. 356, 358–375; 2 Barron & Holtzoff, Federal Practice and Procedure, 1970 Pocket Part, p. 3, §§ 511, 512.

tion and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

"(b) Determination by Court Whenever Joinder Not Feasible. If a person as described in subdivision (a) (1)—(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder."

In *Provident,* the Supreme Court further stated that in determining whether a party must be joined upon timely motion made, as in the case sub judice, there must be a balancing of interests which the Court must consider, applying the following criteria:

"[The fact that a nonparty would not be bound by a judgment] does not mean either (a) that a court may never issue a judgment that, in practice, affects a nonparty or (b) that * * * a court may always proceed without considering the potential effect on nonparties simply because they are not 'bound' in the technical sense. * * * The court must consider the extent to which the judgment may 'as a practical matter impair or impede his ability to protect' his interest in the subject matter. 390 U.S. at 110, 88 S. Ct. at 738.

" * * * One basis for dismissal is prejudice to the rights of an absent party that 'cannot' be avoided in issuance of the final decree. Alternatively, if the decree can be so written that it protects the interests of the absent persons, but as so written it leaves the controversy so situated that the outcome may be inconsistent with 'equity and good conscience,' the suit should be dismissed." 390 U.S. at 124–125, 88 S.Ct. at 746.

It is therefore necessary for this Court to summarize the contentions of the plaintiff herein and the issues raised by the pleadings to determine whether the defendant's Motion to Dismiss should be granted.

Plaintiff and all of the defendants trace their titles back to a common title in one Dennis Husbands who died in the year 1917 and left as his heirs at law his wife and all the heirs as revealed by the heirship chart attached to plaintiff's "Declaration", and that title remained in the heirs without any change in record ownership until September 19, 1938, which commenced the chain of title of the defendants, a record title allegedly adverse to the heirs of Dennis Husbands. The land in question was sold for taxes and certified by the State of Mississippi which thereafter issued a patent to one Charlie Altman on October 2, 1942 after which Altman, an alleged blind man, conveyed to one Sam Broad-

head all of his interest therein, which instrument of conveyance was signed by Altman with a "mark" and is alleged to have been a forgery, thus void and not conveying title to Broadhead. The State Tax title was confirmed against the State of Mississippi in a suit styled "Sam Broadhead v. State of Mississippi."

Subsequently, Broadhead filed a title confirmation suit styled "Sam Broadhead v. Sam Husbands, et al." in the Chancery Court of Clark County, Mississippi in 1953 and named as additional defendants therein "Dennis Husbands, if living, and if dead, his unknown heirs, devisees and executors, whose whereabouts, places of residence, post office and street address is unknown and cannot be ascertained after diligent search and inquiry and against all other persons having any claim, legal or equitable" to the land involved in the case sub judice.

Plaintiff alleges, inter alia, that the final decree rendered by the Chancery Court of Clark County in 1954 [3] in favor of Broadhead, confirming his title to the property in question was void because the Court lacked jurisdiction inasmuch as necessary parties were not made defendants thereto as provided by § 1323 of the Mississippi Code of 1942 and Amendments thereto; [4] that the complainant falsely and fraudulently swore that he was the real owner and in possession; that on the date of filing of the suit and for ten years prior thereto and for more than ten years after the filing thereof, there were in actual occupation of said land and in residence thereon heirs of Dennis Husbands who were in actual, open, continuous, hostile and notorious possession thereof under claim of ownership, including the wife of Sam Husbands, Clara Husbands, who lived on and occupied a part of the land as her homestead until her death in 1960, as well as several named children of Martha Husbands Arrington, the second daughter of Dennis Husbands. Plaintiff therefore claims title by adverse possession through the above named parties, some of whom were his lessors and whom he claims acquired title by adverse possession on behalf of all of the other heirs of Dennis Husbands.

Although plaintiff does not herein pray for the cancellation of the above title confirmation decree, he does in Paragraph 5 of his "Declaration" allege "that the decree should be cancelled as a cloud upon the title of your plaintiff herein * * *" Furthermore, in Paragraph 6 of his "Declaration" he contends that the decree was at variance with the opinion rendered by the Chancery Court of Clark County, Mississippi with respect to the acreage affected, and thus the decree in question was "not in reality the decree of said court, and therefore, should be set aside as void." Plaintiff alleges in Paragraph 7 of his pleading that his title is predicated upon a title of adverse possession of the heirs of Dennis Husbands, the deceased, who executed oil and gas leases to the plaintiff, and that the possession of some of the heirs inured to the benefit of all the heirs including plaintiff's lessors who

---

3. All of the Chancery Court proceedings in connection with the title confirmation suit are attached to the "Declaration" filed by the plaintiff herein.

4. Section 1323, Mississippi Code of 1942, as Amended, provides:

"The owner in possession of any land, or the owner thereof who may be out of possession, if there be no adverse occupancy thereof, may file a bill in the chancery court to have his title confirmed and quieted; and the law for notice, process, proceedings, and practice, as provided for confirming and quieting tax-titles shall apply, no matter by what tenure the complainant may hold; and unknown and non-resident parties may be made defendants as they are made defendants to proceedings to confirm tax-titles. If on the final hearing of any such suit the court shall be satisfied that the complainant is the real owner of the land, it shall so adjudge, and its decree shall be conclusive evidence of title as determined, from the date of the decree as against all parties defendant."

had good and merchantable title to the interest they conveyed to the plaintiff in their leases by which they reserved a ⅛th overriding royalty interest to all oil and gas produced by plaintiff. He asks this Court to cancel as a cloud upon his title the adversely claimed mineral interests of all the defendants deraigned from the title of Sam Broadhead. It is his contention that by virtue of the adverse possession on two occasions, namely from October 2, 1942 to September 16, 1953 and from 1953 until October, 1964 and because the equitable principle of laches, the defendants hold no interest whatsoever in the lands involved; therefore, each of the instruments in the defendants' chain of title should be cancelled as a cloud upon the leasehold interest or title of plaintiff.[5]

In opposition to the Motion to Dismiss, plaintiff avers that since this is a suit to remove clouds upon his title filed pursuant to § 1324 of the Mississippi Code of 1942 as Recompiled,[6] rather than a suit to conform title filed pursuant to § 1323 of the Mississippi Code of 1942 as Recompiled,[7] that his lessors need not be made parties hereto under the substantive law of the State of Mississippi which would be required if this suit had been filed for confirmation of his title pursuant to § 1323.

The defendants, in support of their Motion, counter that Rule 19 of the Federal Rules of Civil Procedure, rather than the substantive law of the State of Mississippi, governs and controls the question before this Court and that since the plaintiff challenges the validity of the Chancery Court decree rendered in 1954, that all parties whose rights were or are affected by that decree, including plaintiff's lessors, must be made parties hereto. They further argue that since the plaintiff's claim is based upon the alleged title of his lessors through adverse possession, that his title would be no better than theirs, and that any judgment of this Court would not only have to decide the validity of plaintiff's lessors' title and their right to receive any overriding royalty from oil and gas produced pursuant to their leases with the plaintiff. Thus, defendants contend that plaintiff's lessors and grantors would necessarily have to be made parties to this suit pursuant to the provisions of Rule 19, F.R.Civ.P. As previously stated in this opinion, it is now settled that in a diversity case, the question of joinder is one of federal, rather than state law, and that although state law questions may arise in determining what interest an outsider actually has, the ultimate question whether, given the state-defined interests, a federal court may proceed without the outsider is a federal matter controlled by the Federal Rules of Civil Procedure.[8] It is therefore neces-

---

5. These 24 instruments are listed on pp. 13–15 of plaintiff's "Declaration".

6. Section 1324 of the Mississippi Code of 1942 as Amended provides:

   "When a person not the rightful owner of any real estate, shall have any conveyance or other evidence of title thereto, or shall assert any claim, or pretend to have any right of title thereto, which may cast doubt or suspicion on the title of the real owner, such real owner may file a bill in the chancery court to have such conveyance or other evidence or claim of title cancelled, and such cloud, doubt or suspicion removed from said title, whether such real owner be in possession or not, or be threatened to be disturbed in his possession or not, and whether the defendant be a resident of this state or not; and any person having the equitable title to land may, in like cases, file a bill to divest the legal title out of the person in whom the same may be vested, and to vest the same in the equitable owner. Any person holding or claiming under a tax title lands heretofore or hereafter sold for taxes may proceed hereunder in like manner and may include, as a defendant, any political subdivision of the state having or asserting any evidence or claim of title adverse to such tax title."

7. See footnote 4, supra.

8. Provident Tradesmens Bank & Trust Co. v. Patterson, *supra;* Jamison v. Memphis Transit Management Co., 381 F.2d 670 (C.A.7, 1967).

sary to consider amended Rule 19 and the federal case law construing it in order to grant or overrule the defendants' Motion to Dismiss.

Although Rule 19 as Amended was completely rewritten in 1966, and "is designed to ameliorate catechistic distinction between 'necessary' and 'indispensable' parties, which had sometimes subordinated logic and reality to historical encrustations * * *", and thus "Under the present rule pragmaticals are to be the solvents of joinder problems, replacing former rigid terminological descriptions of parties * * *", making the effect on the parties and upon the litigation process the fulcrum of decision,[9] nevertheless many decisions of the courts prior to 1966 are applicable hereto inasmuch as they in most instances applied the then unwritten 1966 version of Rule 19 to the facts of the cases before them and did enunciate what now is the correct test under the Rule as rewritten. In the widely cited case of Calcote v. Texas Pac. Coal & Oil Co., 157 F.2d 216, (C.A. 5, 1946), cert. den. 329 U.S. 782, 67 S.Ct. 205, 91 L.Ed. 671, the Fifth Circuit stated:

> "In diversity cases, the question of indispensable parties is inherent in the issues of federal jurisdiction, the determination of which should never await a decision on the merits if the complaint states a cause of action. Jurisdictional questions come first in the orderly disposition of a case."

In *Calcote*, which was decided originally by the United States District Court for the Southern District of Mississippi, lessors brought suit to cancel a mineral lease because the lessee at the time of the lease was a foreign corporation allegedly unlawfully doing business in Mississippi. The appellants, Calcote, argued that under local law (§ 5343, Miss.Code of 1942) the lease was void when executed and being void was not subject to ratification. The appellee contended that the lease was voidable, not void, and thus could be and was ratified. The primary question for decision on the merits therefore was the validity of the lease. The mineral interests in the land were conveyed, subject to the lease, by appellants to several grantees who were not made parties plaintiff or defendant. The Fifth Circuit, in reversing the District Court which overruled the defendants' Motion, stated:

> "On the threshold of this appeal is the decisive issue as to whether these royalty grantees were indispensable parties. According to the record, they acquired from the Calcotes an interest, not only in the royalties reserved by them as lessors in the lease to the appellee, but also in any other lease that might be executed by them covering the land in question. They are, therefore, interested in the prayer for the cancellation of the lease, since cancellation would destroy their royalties existing in praesenti, and the Calcotes might not see fit to make another mineral lease or to develop and operate the aforesaid lands for minerals. On the other hand, while improbable, it may be to the advantage of the royalty grantees to have the lease confirmed. This is not a question of law but of fact, and there is no evidence in the record to give the answer to it, because the royalty grantees have not been made parties to this action. The fact that their interests may not have been prejudically affected by the final judgment below, which was rendered after a trial on the merits, is not controlling, because *the question of indispensable parties, and particularly of diversity jurisdiction, does not depend upon the result of the suit. The true test is the situation that existed before and not after entry of the final judgment.*" (Emphasis supplied). 157 F.2d at 218.

\*   \*   \*   \*   \*   \*

---

9. Broussard v. Columbia Gulf Transmission Company, 398 F.2d 885, 888 (C.A.5, 1968).

" * * * It would not be possible to cancel this lease without destroying the undivided three-fourths royalty interest therein owned by the above named individuals who have not been made parties to this suit. Therefore no decree can be entered in this case in accordance with the prayer of the complaint without annulling the vested rights of absent parties whose presence might deprive the court of jurisdiction. The leasing contract was an entirety, and from its nature could not be cancelled as to the Calcotes and allowed to stand as to the other royalty owners. The lessors and their grantees were, technically and beneficially, joint owners of a common property, each with an undivided interest in every particle of the minerals. None of them owned a single molecule severalty. The relation of the royalty grantees to the controversy over the validity of this lease was so direct and vital that no adequate judgment could be entered without affecting their interests. If it had been cancelled as to the Calcotes, it would have been cancelled as to their grantees, because a royalty interest under an invalid lease is a nullity. * * No court can directly adjudicate upon a person's rights without such person being actually or constructively before it."

" * * * It is not the reversionary interest in the land, but the leasehold, that is the subject matter of this suit. It is the estate held by virtue of the lease that is sought to be destroyed by cancellation of the lease, and the grantees' interest in that estate is three times as great as appellants'. The leasehold estate is a determinable fee distinct from the reversionary interest in the land, and the right to receive royalty payments is a distinguishable legal interest, (cases cited in fn. 10 are omitted), which was reserved by appellants out of the leasehold estate; but a royalty may also be created prior to any lease. (Cases cited in fn. 11 are omitted)." 157 F.2d at 219–220.

In Hilton v. The Atlantic Refining Company, 327 F.2d 217 (C.A.5, 1964), a suit for removal cloud on title by lessors, residents of Texas, against the lessee, a Pennsylvania resident, who removed the case to Federal Court from the state court where plaintiffs' Motion to Remand was overruled, the United States Court of Appeals for the Fifth Circuit, in reversing the United States District Court which denied the Motion to Remand, held that where a decision in favor of the lessors would result in terminating the lease and denying nonparticipating royalty holders, Texas residents, their right to royalties, the nonparticipating royalty holders were indispensable parties and they must be joined as parties defendant thereby destroying diversity jurisdiction of the Federal Court, thus requiring that the case be remanded to the state court. In *Hilton,* the Court reasoned that the judgment which would result in the termination of the lease would have effectively prevented any future recovery by the nonparticipating royalty owners under that lease, and the District Judge could not, by determining in advance that he would decide the case adversely to plaintiff's claim, make dispensable parties who would otherwise be indispensable. (Citing Hudson v. Newell, 172 F.2d 848, 852 (C.A.5, 1949) and Young v. Powell, 179 F.2d 147, 151 (C.A.5, 1950)).

The plaintiff's reliance herein on the cases of Hudson v. Newell, *supra* and Amerada Petroleum Corporation v. Rio Oil Company, 225 F.Supp. 907 (D.Wyo. 1964) is misplaced, inasmuch as the facts of *Hudson* are distinguishable from those of the present case and it applied the pre-1966 Rule 19 provision which was rewritten to prevent piecemeal litigation resulting in multiple suits. Certainly the facts of *Amerada* are distinguishable from those in the present case. Furthermore, in *Amerada,* the Court stated

that it was in accord with those cases holding that the lessor is an indispensable party where the lessee is the defendant and the decree would necessarily affect the rights of the defendant's lessor or where a fund is in issue or rental or royalty payments would be affected or where cancellation of the deeds or other instruments is prayed for. 225 F.Supp. 910.

In Lawrence v. Sun Oil Co., 166 F.2d 466 (C.A.5, 1948), the Fifth Circuit in affirming the United States District Court for the Western District of Louisiana held that under Rule 19 as it then existed, a court cannot adjudicate rights under conflicting oil leases of the same property executed by different lessors, and each providing for the payment of royalty, in a suit by the lessee to which the lessors are not parties. The Court stated:

"In an early case, the Supreme Court of the United States, Shields v. Barrow, 17 How. 130, 139, 15 L.Ed. 158, said:

'Persons who not only have an interest in the controversy but an interest of such a nature that a final decree cannot be made without either affecting that interest or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience [are indispensable parties]. * * *'

"Since then, in numerous adjudications it has been held that a test of indispensability is whether the absent party's interest in the subject matter of the litigation is such that no decree can be entered in the case which will do justice between the parties actually before the court without injuriously affecting the rights of the absent party.

"It is apparent from the petition and from the documents that the validity of appellant's lease from Mrs. Irene Thomas and his rights under the lease are dependent upon the nullity of the conveyance from Mrs. Irene Thomas to Arthur E. Thomas. It is likewise apparent that the validity of the lease of the appellee is dependent in part upon the validity of the conveyance from Mrs. Irene Thomas to Arthur E. Thomas. It follows, therefore, that before a final judgment between the parties before us can be given, the validity of the deed from Mrs. Thomas to Thomas must be passed upon and that any ruling with respect to that deed will injuriously affect the rights of Mr. or Mrs. Thomas, or both of them. This may not be done without having the parties to the deed before the court. Under the Federal Rules, a court cannot adjudicate rights under conflicting oil leases of the same property executed by different lessors, and each providing for the payment of royalty, in a suit by the lessee to which the lessors are not parties. South Penn Oil Co. v. Miller, et al., 4 Cir., 175 F. 729. The doctrine of that case is sound and applies with equal force to the case before us. Cf. Calcote, et al. v. Texas Pacific Coal & Oil Co., 5 Cir., 157 F.2d 216."

This Circuit has recently rendered two excellent opinions in which it discussed the history, purpose and effect of Amended Rule 19 and its proper application to the facts of each particular case. Broussard v. Columbia Gulf Transmission Co., 398 F.2d 885 (C.A.5, 1968), and Schutten v. Shell Oil Co., 421 F.2d 869 (C.A.5, 1970).

In *Broussard* the plaintiffs, as co-owners of a tract of land in Lafayette Parish, Louisiana, filed their complaint against the defendant, a gas company having its principal place of business in the State of Texas. The Complaint alleged that Elia Broussard and her husband, Ben D. Broussard, in August, 1953, had granted to Gulf Interstate Gas Company an easement and right-of-way across the property in question which was assigned to the defendant and appellee in December 1958; and that between 1953 and 1966

the two companies constructed three gas transmission pipe lines across the property. The appellants, Broussard, sought an injunction requiring the removal of the pipe lines on the theory that Gulf Interstate Gas Company had failed to describe adequately the easement in the written agreement and had failed to establish a dominant estate to which benefit from the right-of-way and easement might accrue, and also sought damages, claiming their land had been devalued by the burden of the easement. The defendant filed a Motion to Dismiss the Complaint for failure to state a claim and during oral argument it became apparent that one of the plaintiffs, Sarah Jane Broussard Hebert, was not a citizen of Louisiana as previously assumed, but rather a citizen of Texas as was the defendant and appellee therein. The District Court granted an Ex Parte Motion to Dismiss Hebert as a party to the suit but later upon request vacated this Order declaring her to be an indispensable party to the suit and granting defendant's Motion to Dismiss for lack of jurisdiction. In affirming the trial court, the Fifth Circuit said:

" \* \* \* Though perhaps founded on terminology that is now passe, that ruling is not inconsistent with the liberal pronouncements and intentions of revised Rule 19.

"The appellants contend that Louisiana law permits anyone rightfully in possession of the premises to which an easement is appurtenant to seek an injunction to test its validity. Having assumed this hypothesis, they conclude that Mrs. Hebert's interest, being one of title, does not alter the rights of the remaining co-owners who are in actual possession of the property. This reasoning, however, merely calcifies the procedural pigeonholing which the revisors of Rule 19 sought to eliminate (citing Provident and other cases).

\* \* \* \* \* \*

"Our venture into pragmatic analysis under Rule 19 necessitates critical evaluation of two controlling factors in this case: (1) the inability of the federal district court to finalize the litigation or to effectively adjudicate the rights of all concerned parties, and (2) the availability of adequate relief in the Louisiana state court system, which is highly competent to hear arguments concerning Louisiana land law.

"If the district court were to hear this case on the merits, its decision would merely begin rather than conclude litigation. For example, a reversal by this Court might logically be followed by appellee's suit for a partition to avoid paying any damages which might be due Mrs. Hebert. J. C. Trahan Drilling Contractor, Inc. v. Younger, Ct.App.La.1964, 169 So.2d 15. This, of course, would not prevent Mrs. Hebert's filing a separate suit, and the probability of such action would increase proportionally with the amount of damages awarded in the district court below. On the other hand, even if the appellants were to lose below, Mrs. Hebert might wish to try her luck in a separate suit. By any combination or permutation, then, a reversal of the district court's dismissal would engender further litigation, i. e., multiplicity of suits.

"In contrast, dismissal of the suit does not significantly prejudice the appellants. We call attention to the Advisory Committee Notes which state in part:

"The *fourth factor* [of the new Rule 19] looking to the practical effects of their dismissal, indicates that the court should consider whether there is any assurance that the plaintiff, if dismissed, could sue effectively in another forum where better joinder would be possible. (cases cited are omitted).'

"The cause of action involved in this litigation could easily be brought in a state court of Louisiana. In fact, the suit involves activity on real property

in which the State of Louisiana rather than the federal judiciary, has a fundamental concern. * * *

"We therefore find that in equity and good conscience the district court correctly exercised its discretion by dismissing the suit. We add, moreover, that the pragmatical approach elevates the role of judgmental discretion in the joinder problem. While this discretion may not have the constrictions of a clearly erroneous rule, we must be mindful that the district judge is closer to the arena and is often in a better position to survey the practicalities involved in the litigation."

In *Schutten, supra*, the appellants, plaintiffs below, filed suit in the District Court seeking to evict the appellee, Shell Oil Company, and sought an accounting for the removal of oil, gas and other minerals from land in Plaquemines Parish, Louisiana, claiming ownership of the land of which they were not in possession. The appellee and defendant below, Shell, moved to dismiss on the ground that its lessor, The Board of Commissioners of the Orleans Levee District, who claimed title to the land in question, was an "indispensable party" who could not be joined since such action would destroy the District Court's diversity jurisdiction. The Fifth Circuit, in affirming the District Court's granting of the appellee's Motion to Dismiss the case, stated that in deciding the issue it is clear that the provisions of Rule 19 of the Federal Rules of Civil Procedure control, citing Provident Tradesmens Bank & Trust Co. v. Patterson, *supra*.

This Court considers it apropos to quote extensively from the excellent opinion of the Court of Appeals as follows:

"The reformation of Rule 19 in 1966 was the result of judicial inequities which had slowly but steadily grown under the concept of the 'indispensable' party. The reform of Rule 19 was preceded by more than a decade of scholarly inspection and debate. Under its prede-

cessor, it was often held that absence of an 'indispensable' party deprived the court of any power to render relief to the parties before it. See Young v. Powell, 179 F.2d 147 (5th Cir. 1950). The 1966 revision of Rule 19 sought to give the courts greater latitude in deciding whether a case should be dismissed for nonjoinder of a supposedly 'indispensable' party. * * * *" 421 F.2d 871.

\* \* \* \* \* \*

"The 1966 amendment of Rule 19 attempts to remedy this situation by conditioning a finding of 'indispensability' upon 'pragmatic considerations.' Provident Tradesmens Bank & Trust Co. v. Patterson, supra, 390 U.S. at 106–107, 88 S.Ct. 733.

"Subdivision (a) of Rule 19 categorizes those persons whose joinder is desirable from the standpoint of complete adjudication and elimination of relitigation. If there are no procedural or jurisdictional bars to joining such a party, Rule 19 requires that he be joined. It is to be noted that subdivision (a) eliminates reference to the 'abstract' or 'substantive' interests involved by avoiding such terms as 'joint' and 'separable.'

"Subdivision (b) of Rule 19 requires a court to examine four 'interests' before deciding whether 'in equity and good conscience' the court should proceed without a person whose joinder is impossible. The distilled essence of these 'criteria' of subdivision (b) is the attempt to balance the rights of all concerned. See Provident Tradesmens Bank & Trust Co. v. Patterson, supra. The plaintiff has the right to 'control' his own litigation and to choose his own forum. This 'right' is, however, like all other rights, 'defined' by the rights of others. Thus the defendant has the right to be safe from needless multiple litigation and from incurring avoidable inconsistent obligations. Likewise the interests of the outsider who cannot be joined must be considered. Finally there is the public interest and the interest the court has in seeing that insofar as

possible the litigation will be both effective and expeditious.

"As pointed out by the Advisory Committee, supra n. 7, the term 'indispensable' as utilized in the present Rule 19 is not 'definitive' but 'conclusionary'. The term simply denotes a conclusion reached upon due consideration that the person is one who should be joined but whose joinder is impossible and that it is preferable to dismiss the case than to proceed without him. It is to be stressed that the criteria set forth in Rule 19 are not to be applied mechanically nor are they to be used to override compelling substantive interests. As pointed out in Provident Tradesmens Bank & Trust Co. v. Patterson, supra at 119, 125, 88 S.Ct. 733, Rule 19 does not foreclose consideration of substantive interests, it simply acts as a guide to enlightened consideration of those interests. Stated otherwise, substantive rights are no longer the be all and end all of the joinder question.

"In applying Rule 19 the courts must refrain from taking a view either too broad or too narrow in determining 'prejudicial' effect of a judgment. The watchwords of Rule 19 are 'pragmatism' and 'practicality'. The court must, however, always consider the possibility of shaping a decree in order to adjudicate between the parties who have been joined. In this vein the court must guard against the formulation of 'paper' decrees which neither adjudicate nor, in the end, protect rights.

"Considering the present case in the light afforded by Rule 19 we cannot say that the district court erred in dismissing the action and declaring the Levee Board an 'indispensable' party.

"Under subdivision (a) the Levee Board is clearly a party 'to be joined if feasible.' Its joinder is impossible, however, since it would destroy the District Court's diversity jurisdiction. Appellants argue that under Louisiana substantive law their action is merely personal against Shell for trespass and that

the Levee Board has no 'interest' in the action. As pointed out above, the concept of substantive severability is no longer the guiding star of the joinder problem. Nevertheless, a review of the relevant statutory provisions and their interpretation by the Louisiana courts leads us to reject the appellants' argument that the interests of the lessor and lessee of mineral rights are 'severable' under Louisiana law. See Le Sage v. Union Producing Co., 249 La. 42, 184 So.2d 727 (1966). It cannot be denied that appellants' action in trespass is based upon its claim of ownership of the land overlying the mineral deposits. This claim is directly opposed to the Levee Board's claim of ownership which is 'backed up' by its possession in fact. This question of actual ownership must necessarily be adjudicated before the trespass and accounting issues are reached. There is no doubt that the Levee Board has an interest in this litigation and is a 'party to be joined if feasible.' Since it is not feasible to join the Levee Board we must now consider what alternatives are available under the 'equity and good conscience' standard. To do this we must apply the pragmatic criteria of subdivision (b) of Rule 19.

"The first factor that must be considered is the extent to which a judgment might prejudice the unjoined Levee Board or those already parties. Appellants argue that the Levee Board would not be prejudiced because it would not be bound, in the res judicata sense, by any judgment which might be rendered. Nor would the Board be precluded from asserting its rights in another action presumably in Louisiana state courts. We decline to accept the appellants' narrow and technical view of what would constitute prejudice to the Levee Board. It is clear that courts should not proceed simply because the unjoined party is not 'bound' in the technical sense. Provident Tradesmens Bank & Trust Co. v. Patterson, supra, 390 U.S. at 110, 88 S.Ct. 733. Furthermore, one of the purposes,

though not the sole purpose, of Rule 19 is the avoidance of multiple litigation of essentially the same issues.

"The possibility of prejudice to the Levee Board is most certainly not superficial. First, if Shell is ousted the Levee Board's royalty interest would cease in practically the same manner as if the court had decreed a cancellation of the lease. This would happen despite the fact that the Levee Board's claim of ownership would be technically unimpaired by the judgment in the sense that it would not be bound by the judgment.

"Second, though not technically bound a judgment would most assuredly create a cloud on the Levee Board's title and greatly diminish the value of the property. This result would be adverse to both appellants and the Board and would require yet more litigation. A judgment in favor of the appellants would in effect adjudicate the Levee Board's claim of ownership without giving them the right to present their defense and assert their own claim on its merits. While Shell does have a substantial interest in the Levee Board's claim this 'interest' would not justify placing the burden of proving the Levee Board's ownership on Shell.

"Third, a judgment might result in inconsistent obligations for the defendant Shell Oil Company. Furthermore, a judgment in appellants' favor might render the Levee Board liable to Shell for loss or damage for the peaceable possession of mineral rights. See La.Civ.Code Arts. 2692, 2696. Again all of this could come about without affording the Levee Board the opportunity to defend its interests even though the Board would not be bound by the judgment.

"A conclusion that as a practical matter the Levee Board would be prejudiced by a judgment rendered in their absence leads us to consider the second and third 'factors' of Rule 19: 'the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided', and whether a judgment rendered in the Levee Board's absence will be adequate. Appellants have suggested no way in which these objectives could be accomplished and we are unable to discover any ourselves. Since the litigation revolved around the conflicting claims of ownership, we are unable to envision a decree which would effectively settle any controversy between the appellants and the present defendant, Shell, without doing substantial practical injury to the Levee Board's unassertable claims. Any attempt to fashion a judgment which would lessen this harm would result in a meaningless decree.

"A judgment rendered at this time and without the Levee Board would simply result in additional costly litigation no matter how such judgment was formulated. This fact leads us to consider the fourth and final criteria of Rule 19: whether the appellant has an adequate remedy elsewhere. The answer to this question is that appellants will by no means be prejudiced themselves if forced to pursue their remedy in the courts of the State of Louisiana. Both the Levee Board and Shell are amenable to process in Louisiana. This litigation concerns land situated in Louisiana, is governed by Louisiana law and involves a claim of ownership asserted by an agency of the State of Louisiana. Appellants cannot be heard to complain about the competence of the courts of Louisiana in such matters. There is, however, an even more compelling reason for appellants to seek relief in the Louisiana courts. Even if the district court below could fashion a judgment which was adequate while at the same time protective of unassertable rights, additional litigation would most assuredly develop later in the Louisiana courts. By dismissing the case now and directing the appellants to proceed in the Louisiana courts most, if not all, issues can be settled in one bout of litigation. As noted above, the expeditious and effective disposition of litigation is desirable if not always obtainable. In

the present case it is not only desirable but obtainable and is indeed made necessary under the circumstances.

"We therefore conclude that under Rule 19, Federal Rules of Civil Procedure, the present case in all 'equity and good conscience' should not proceed without joinder of the Orleans Levee Board. Moreover, this decision is made easier by the knowledge that the courts of the State of Louisiana offer a forum in which a complete adjudication of all interests can be obtained without fear of needless multiple litigation." 421 F.2d at 873–875.

In the case sub judice, under subdivision (a), the plaintiff's lessors are clearly parties "to be joined if feasible". Their joinder is impossible, however, since it would destroy this Court's diversity jurisdiction. The plaintiff argues that under Mississippi substantive law his action is merely a suit to remove the defendants' clouds on his title and is thus personal against the defendants only; that his successful prosecution of this action would benefit, and in no way would be adverse to, the interests of his lessors and that they would thus have no "interest" in this action. What plaintiff overlooks is that it is well established under the law of the State of Mississippi that a cloud removal suit of this type, while permitting a plaintiff to proceed against those of his choosing, nevertheless requires as a prerequisite to his being granted the relief prayed for, that he allege and prove a perfect legal or a perfect equitable title in himself, and he is not entitled to prevail on the weakness, or even the entire want of title on the part of his opponents; or, as the phrase is usually framed, he must recover on the strength of his own title and not on the weakness of that of his

adversaries, regardless of whether their title be invalid or even nonexistent. Under Mississippi substantive law, not only must plaintiff prevail on the strength of his own title, which he has the burden of proving, but his pleading is to be construed more strongly against him.[10] In order to prove the required perfect title in himself, even if this is in actuality a cloud removal suit, rather than a confirmation of title suit, about which this Court has some doubt, the plaintiff must necessarily rely upon and prove a good and valid title by adverse possession in his lessors to the land and minerals thereunder, because the validity of his title based on this theory is necessarily dependent thereon. In other words, any adjudication of an absence of title in plaintiff by adverse possession as claimed, would necessarily involve an adjudication by this Court of the lack of a valid title by adverse possession in his lessors. Although the concept of "substantive severability" is no longer the guiding star of the joinder problem, nevertheless this Court rejects the plaintiff's argument that the interests of his lessors and his interest as their lessee of mineral rights are "severable" under Mississippi law. Therefore, the question of actual ownership must necessarily be adjudicated because under Mississippi law a mineral lease is an actual interest in the real property.[11] Not only are plaintiff's lessors interested in any royalties payable under the leases and expecting to be paid, but their claim is an actual claim of ownership of the land itself, which is in direct conflict with the claim of the defendants, and which question of actual ownership must necessarily be adjudicated before the accounting issues are reached herein. Thus there is no doubt that the plaintiff's lessors have an interest in this litigation and are

10. Griffith, Mississippi Chancery Practice, 2nd Edition, 1950, pp. 197–200, §§ 211–213 and cases cited therein.

11. See Martin v. Eslick, 229 Miss. 234, 90 So.2d 635, 641 (1956); Dougherty v Greene, 218 Miss. 250, 67 So.2d 297, 300 (1953); Koenig v. Calcote, 199 Miss. 435, 25 So.2d 763 (1946).

"parties to be joined if feasible." Since it is not feasible to join these parties without destroying diversity jurisdiction herein, this Court must now consider what alternatives are available under the "equity and good conscience" standard by applying the criteria of subdivision (b) of Rule 19.

■ The first factor to be considered under subdivision (b) is the extent to which a judgment might prejudice the unjoined lessors of plaintiff or those already parties. Although the plaintiff apparently contends that his lessors would not be prejudiced because they would not be bound, in the res judicata sense, by any judgment which might be rendered herein, nor would they be precluded from asserting their rights in another action presumably in the Mississippi State courts, to permit these factors to govern or control the disposition of this Motion would be begging the question by applying too narrow and technical a test of what constitutes prejudice to the absent parties. It is well established that since the adoption of the new Rule 19 that courts should not proceed simply because the unjoined parties are not "bound" in the technical sense of the word. Provident Tradesmens Bank & Trust Company v. Patterson, *supra*, 390 U.S. at 110, 88 S.Ct. 733; Schutten v. Shell Oil Co., *supra*, 421 F.2d at 874. Furthermore, as will be more fully discussed hereinafter, one of the purposes of Rule 19 is the avoidance of multiple litigation of essentially the same issues.

■ The probability of prejudice to the plaintiff's lessors is most certainly very real. If the plaintiff does not prevail, his lessors would not be entitled to receive the overriding royalty which they reserved and which would be dependent on his entitlement to a decree adjudicating good and valid title in himself as well as an accounting from the defendants, and particularly Skelly Oil Company, for all revenues already derived from the producing wells on the property in question. This would occur despite the fact that lessors' claim of ownership would be technically or legally unimpaired by the judgment in the sense that they would not be bound thereby since they are not parties to this action.

Also, plaintiffs attack the validity of the title confirmation decree rendered by the Chancery Court of Clark County, Mississippi in 1954 which directly affected the title of plaintiff's lessors, and thus plaintiff's title, to the land in question and the minerals beneath. Assuming, without deciding that the plaintiff is correct in his contention that this Court has jurisdiction to determine the validity of the State Court Decree which was never appealed nor attacked in any manner prior to this time, and whether this attack is a direct or collateral attack, then all parties affected by that decree would be affected by this Court's determination of its "jurisdictional validity" and/or its conformance with the actual findings and opinion of the Chancery Court, which plaintiff contends the decree to be inconsistent with. Therefore, this Court's determination of the validity of the state court decree and/or its conformance with the opinion upon which it was based would definitely and substantially affect not only plaintiff's claim of title to the property and minerals in question but also that of his lessors, in view of the previously stated history of that litigation. Chance v. County Board, 332 F.2d 971 (C.A.7, 1964).

Another factor which must be considered is that any judgment adverse to the plaintiff would possibly subject his lessors to a suit by him under the provisions of the leases executed by them in his favor or under other applicable provisions of Mississippi law. This could result without affording the lessors the opportunity to represent their interests herein, particularly since the mere fact that the plaintiff has a substantial interest in his lessors' claims does not justify depriving them of the benefit of presenting their own claims in their way

through their own attorneys. Certainly the plaintiff does not have the burden or responsibility of proving their ownership.

Thus, this Court concludes that plaintiff's lessors would be prejudiced by a judgment or decree of this Court adverse to plaintiff's contentions if rendered in his lessors' absence, because it would at the very least cast a cloud on their claimed titles even if they would not be technically bound thereby. Furthermore, if this action were tried to conclusion in the absence of plaintiff's lessors being parties hereto, they would not be bound by the judgment or decree of this Court, and the prospect of multiple litigation against the defendants is not only a real possibility but a probability. No judgment or decree rendered herein could divest them of the right to have the identical issues decided by this Court subsequently decided as to them by an appropriate State Court, and thus conceivably result in many additional suits which would litigate these very same issues. Therefore, if this Court proceeded to decide the merits of this case in the plaintiff's lessors' absence, it is possible that the defendants would be faced with conflicting state court decisions in subsequent state court litigation. This real and apparent danger was discussed in Bixby v. Bixby, 50 F.R.D. 277, 280–281 (U.S.D.C.S.D.Ill., 1970), in which the District Court in holding that residuary legatees were indispensable parties to a suit raising the issue as to whether directions in a will for transfer of an interest in a partnership to the testator's wife included profits and increments which accrued after the testator's death, and dismissing the complaint because joinder of such persons as plaintiffs would destroy necessary and complete diversity of citizenship, stated:

"The prospect of multiplicity of litigation against the defendants is also a real possibility in this situation. No judgment could divest the persons not before the court, or any of them, of the right to have the identical issue decided as to them by an appropriate state court. Nor would a state court be bound by any judgment of this court. In the event of such subsequent litigation, should this court proceed to the merits of this cause, it is thus possible that defendants might be faced with conflicting decisions."

See also Young v. Powell, *supra*, 179 F.2d at 152.

Having concluded that as a practical matter the plaintiff's lessors would be prejudiced by a judgment rendered herein in their absence, this Court is required to consider the second and third test or factors of Rule 19: "the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided", and whether a judgment rendered in the lessors' absence will be adequate. Inasmuch as this litigation revolves around and is based upon conflicting claims of ownership, this Court is unable to envision any decree which it could fashion which would effectively settle any controversy between the plaintiff and defendants, without doing substantial practical injury to the plaintiff's lessors unassertable claims of ownership which are at least in part dependent upon the invalidity of the state court title confirmation decree which was rendered in favor of the defendant's predecessors in title, as well as upon the validity of the plaintiff's lessors' title based upon adverse possession, which is an essential prerequisite to the plaintiff's success herein. Any attempts to render a judgment or decree which would lessen this practical and meaningful possible harm would result in a meaningless decree as well as the real probability of additional multiple and costly litigation and possibly conflicting decisions.

It is therefore left for this Court to decide only the fourth and final criteria of Rule 19: "whether the plaintiff has

an adequate remedy if this action is dismissed for nonjoinder."

This Court is of the opinion, as was the Court in *Schutten, supra*, that the answer to this question is that the plaintiff will by no manner or means be prejudiced if required to pursue his desired remedy in the courts of the State of Mississippi. The defendant Skelly Oil Company, although a nonresident corporation has qualified to do business in the State of Mississippi and has appointed a resident agent for service of process, thus making it amenable to personal process within this state. All of the other named defendants, including International Paper Company, who claims to be the surface owner of the property in question, are amenable to process for all the relief requested by the plaintiff in this suit. This litigation concerns land and minerals situated in the State of Mississippi, is governed by Mississippi law, and involves the validity of a Mississippi State Court decree as well as the applicability of various statutes of limitation and Mississippi's definition of the equitable doctrine of "laches" raised by the defendants in defense of and as a bar to this suit. Plaintiffs cannot be heard to complain about the competence of the courts of Mississippi in such matters. Not only would the trial of this action, with plaintiff's lessors being parties thereto, avoid multiple litigation which would probably later develop in the Mississippi state courts, but by dismissing the case now and directing the plaintiff to proceed in the Mississippi courts, most if not all issues can be settled in "one bout of litigation" as stated in *Schutten*. This Court is of the opinion that the expeditious and effective disposition of litigation is desirable if not always obtainable, and in the present case it is not only desirable but obtainable and is made necessary under the circumstances. After all, this cause of action involves Mississippi law relating to real property and mineral interests located in this state in which it, rather than the Federal Judiciary, has a fundamental concern. See *Broussard, supra,* 398 F. 2d at 889.

Thus, this Court concludes that under Rule 19, Federal Rules of Civil Procedure, the present case "in equity and good conscience" should not proceed without the joinder of plaintiff's lessors because to so proceed to the merits of this controversy would adversely affect their rights in their absence, and the state courts of Mississippi offer a forum in which a complete adjudication of all interests can be obtained without the fear of needless multiple litigation.

Based upon the foregoing facts and authorities, the defendants' Motion to Dismiss this action will be granted without prejudice to the cause of action, but for lack of diversity of citizenship jurisdiction here if all "appropriate" parties within the meaning of Rule 19 are joined.

An Order conforming with the foregoing Opinion shall be presented to this Court in the form prescribed by the Rules hereof approved by counsel for both sides within five days.