St. Louis-San Francisco Railway Company *v.* Logue.

4-8976                                    224 S. W. 2d 42

Opinion delivered November 14, 1949.

*E. G. Nahler* and *Warner & Warner,* for appellant.

*James R. Hale,* for appellee.

GEORGE ROSE SMITH, J. The appellees, a married couple, own a home near Fayetteville, on property that is 100 feet west of U. S. Highway 71. Their lot is separated from the highway by the appellant's 100-foot railroad right of way. In about 1943 Mr. Logue began negotiating with appellant for a private road and grade crossing to provide direct access to the highway. During a period of years Logue's efforts to obtain a private crossing were unsuccessful, and on October 31, 1947, this suit was filed in the county court to compel the establishment of the desired crossing. Ark. Stats. 1947, § 76-110. The county court found that the proposed road is necessary to give appellees a means of ingress and egress. It ordered that the road and grade crossing be constructed at the appellees' expense. On appeal the circuit court, sitting as a jury, affirmed the order.

The decisive question is whether the appellees already have a means of access to the highway. About 170 yards south of their property there is a public crossing leading to the highway. To reach this crossing the appellees must travel across the front part of three lots abutting the railroad right of way, these lots being owned respectively by Angus Allen, Velda Sweetser and Arthur Allen. Appellant contends that the appellees now have an easement across these lands; the appellees deny this.

It is admitted that there is a private road across the three lots, which the Logues have been using, whenever it is passable, since 1935. This use was originally permissive, the lots having been owned by Mrs. Logue's brothers. In 1947 Angus Allen, the Logues' next door neighbor, applied for a loan on his property, but the title attorney was doubtful about his means of ingress and egress. An agreement was prepared, by which Arthur Allen gave an easement to Mrs. Sweetser, Angus Allen and Logue. Mrs. Sweetser in turn gave an easement to Angus Allen and Logue, and Angus Allen gave one to Logue. All these easements were conditioned upon the railroad's declaring what was then a private crossing to be a public one. The Logues' three neighbors signed the agreement on July 17, 1947, and it was

recorded on November 8, 1947. Later Arthur Allen and Mrs. Sweetser executed an additional grant to Angus Allen, by which the location of the road was described by metes and bounds.

It is the appellees' position that their neighbors' grant of an easement has never been accepted, so that their use of the road is still permissive. The agreement includes a paragraph reciting that Logue accepts the easement and agrees that it provides ingress to and egress from his land. When the other neighbors executed the agreement and presented it to Logue, he refused to sign it. In his own words his refusal was for these reasons:

"A. Because I didn't know it would ever be—I didn't know there would ever be anything done about a public crossing there—there hasn't been nothing done in my favor, sir.

"Q. I believe you testified you had been negotiating with the railroad off and on since when?

"A. I believe '43 was the first that I asked.

"Q. And you had gotten nowhere?

"A. Yes, sir.

"Q. And that was the reason you refused to sign it—you didn't know whether it ever would—whether they ever would do anything?

"A. That's right."

Logue later testified that he didn't believe he would have signed the agreement had he known that the railroad was going to make it a public crossing, but it is fairly inferable that his attitude was affected by his pending negotiations for a private crossing, which would have been impeded if he had agreed that the easement agreement gave him access to the highway. The appellant did in fact declare the existing crossing a public one and erected signs to that effect.

Upon these facts, which are not disputed, must it be held as a matter of law that the appellees have an

easement connecting their property with the public crossing? The answer must be in the affirmative. In legal effect the agreement created an appurtenant easement upon a condition precedent. Logue declined to sign the agreement because he did not think the condition—the declaration of a public crossing—would ever occur. Nevertheless the other parties, without rewriting the contract to exclude Logue from its benefits, placed it on the public records. The appellant has made the crossing public.

We are aware that a grant must be accepted by the grantee, but Logue's refusal was not an unqualified one. He simply thought that the condition would never be performed. A grantee's acceptance is usually contemporaneous with delivery, but there may be a continuing delivery, as where the conveyance is left with a third person or is placed of record. *Vaughan* v. *Godwin,* 94 Ind. 191. The latter is the situation here. We think it clear that the appellees are estopped to refuse the proffered easement and then to rely upon their own refusal as a basis for saying that they are wholly without ingress or egress. If it were shown that the Allens and Mrs. Sweetser had withdrawn their offer a different situation would be presented, but that suggestion is not made.

The remaining questions present little difficulty. It is argued that the existing easement is void because the agreement does not describe it by metes and bounds. Exact description is unnecessary, however, if the grant designates the easement as such and sufficiently describes the servient estates. *Fulcher* v. *Dierks Lbr. & Coal Co.,* 164 Ark. 261, 261 S. W. 645.

The appellees contend that the road to the public crossing is not usable, their testimony being that the land is so wet that the road is impassable during all but two months of each year. But they also admit that this condition is not irremediable. The evidence, taken most favorably to the Logues, shows that the road can be culverted and graveled at a maximum cost of $350, making it serviceable the year round. As against this

figure, the lowest estimated cost for the additional grade crossing is $400. It is true that the present road, when repaired, will be somewhat more inconvenient than a direct crossing; the appellees will have to travel 170 yards farther and pass through three gates in the process. But mere inconvenience is not the test under this statute; another's land may be taken only upon a showing of reasonable necessity. *Mohr* v. *Mayberry*, 192 Ark. 324, 90 S. W. 2d 963. In view of the increased hazard to appellant and to the public that an additional crossing must entail, reasonable necessity has not been shown.

Reversed and dismissed.

McFADDIN and LEFLAR, JJ., dissent.