John H. FETZER, Jr. and C. C. Robinson, Appellees,

v.

CITIES SERVICE OIL COMPANY and Louisiana-Nevada Transit Company, Appellees,

Dalton J. Woods and Thelma Scroggs Woods, Appellees,

Ralph C. Nash, Triple "L" Company, Inc., W. H. Hunt, Appellees,

and

Bodcaw Company, Appellant,

Louisiana and Arkansas Railway Company, Appellee,

Roberta Q. Evans, Rosemary Sorrels Cole, Thomas T. Sorrels, Samuel S. Sorrels, George Robert Stuart, J. Lee Youngblood, Penny Youngblood and W. B. Hogg, Appellees.

No. 77–1076.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 13, 1977.
Decided March 13, 1978.

H. Derrell Dickens, El Dorado, Ark., for appellant.

John H. Fetzer, III, Baton Rouge, La., William G. Wright, Hardin, Jesson & Dawson, Fort Smith, Ark., for appellee.

Before LAY and ROSS, Circuit Judges, and LARSON,* District Judge.

LAY, Circuit Judge.

Plaintiffs, Fetzer and Robinson, filed an accounting action claiming a percentage of proceeds from sale of oil and gas recovered from two strips of land, described as sections 14 and 26, which are portions of a railroad right of way located in Arkansas. Plaintiffs base their claim on royalty interests under a lease from Louisiana and Arkansas Railway Company, successor of the original Louisiana and Arkansas Railroad. The original defendants named were Cities Service Oil Company and Louisiana-Nevada Transit Company, purchasers of the oil and gas recovered from the drilling units which covered sections 14 and 26. Bodcaw Company, successor of the original Bodcaw Lumber Company, was subsequently joined as a defendant because of its alleged interest in section 26. After a bench trial, the district court found that Louisiana and Arkansas Railway Company had title to section 26 in fee,[1] and that the plaintiffs were entitled to a percentage of the oil and gas proceeds attributable to section 26 under their lease with the Railroad. It ordered the defendants to make an accounting of the proceeds attributable to section 26. Bodcaw asserts that it owns fee simple title to section 26 and has filed this appeal.

Bodcaw urges that the district court lacked subject matter jurisdiction and alternatively, that the district court erred in its judgment on the merits. We hold that the district court had jurisdiction; however, we vacate the judgment on the merits and remand to the district court for further consideration.

*Subject Matter Jurisdiction.*

 After the issues had been joined, the Railroad was given leave to file its complaint in intervention, alleging that it owned the mineral estates of both section 14 and section 26 and was entitled to royalty payments under its lease with Fetzer.[2] The Railroad also cross-claimed against Bodcaw Company, which alleged its ownership of all oil and gas in place, and produced from, section 26. Following initial entry of an unfavorable judgment, Bodcaw raised the lack of diversity between itself and the Railroad for the first time. The district court then dismissed the Railroad's complaint in intervention on the ground that Fetzer, its lessee, adequately represented its interest.[3] *See* Fed.R.Civ.P. 24(a)(2).

It therefore asserted that it had an interest in the subject matter of the action and that disposition of the action in its absence might impair its ability to protect that interest. Fed.R.Civ.P. 24(a)(2).

---

* Earl R. Larson, Senior District Judge, District of Minnesota, sitting by designation.

1. The district court also held that the Railroad did not have title to section 14. The plaintiffs have not appealed this judgment.

2. As lessor, the Railroad alleged that it retained a royalty interest of one-eighth, and an overriding royalty of one-eighth, of all the oil, gas, and other minerals recovered from both sections.

3. The court also held that the Railroad could not intervene permissively under Fed.R.Civ.P.

*Section 14.*

In addition to arguing lack of diversity of citizenship jurisdiction in the section 26 controversy, Bodcaw urges that other parties, joined because of their interest in section 14, destroy diversity when plaintiffs' claims to sections 14 and 26 are considered together. Although the district court did not enter an order of severance, it is clear that it treated plaintiffs' claims relating to section 14 and to section 26 separately. In its final opinion, the court stated that the pleadings and the record revealed two "separate and distinct controversies," and it treated them as such pursuant to Rule 21 of the Federal Rules of Civil Procedure for the determination of subject matter jurisdiction and for adjudication on the merits.[4]

Bodcaw has not asserted any interest in section 14 and none of the parties affected by the court's ruling on section 14 have appealed. We find the district court's determination that the two claims are severable under Rule 21 to be correct. Accordingly, we consider the challenge to jurisdiction only as to the parties affected by the district court's ruling on the section 26 claim.

*Section 26.*

Bodcaw challenges the court's jurisdiction of the section 26 controversy, asserting that the Railroad is an indispensable party under Rule 19(b) of the Federal Rules of Civil Procedure. Therefore, Bodcaw contends the district court erred in dismissing the Railroad in order to retain subject matter jurisdiction under Rule 21.

In *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), the Supreme Court rejected an inflexible and formulistic approach to joinder problems. The Court made it clear that Rule 19(b) requires a district court to undertake a "practical examination of the circumstances," 390 U.S. at 119–20, n. 16, 88 S.Ct. 733, in order to determine whether it must dismiss the action or may "in equity and good conscience" proceed without an absent party. The Court stated that the four factors listed in the text of Rule 19(b) suggest four interests to be considered in deciding whether to dismiss the action or proceed.[5] These four interests are: (1) the interest of the outsider whom it would have been desirable to join; (2) the defendant's wish to avoid multiple litigation or inconsistent relief; (3) the interest of the court and the public in complete, consistent, and efficient settlement of controversies; and (4) the plaintiff's interests in a forum and, on appeal, in preservation of his judgment. 390 U.S. at 109–11.

Bodcaw raised the issue of the Railroad's indispensability after trial and initial entry of judgment.[6] In evaluating

24(b), since independent jurisdictional grounds are required for permissive intervention, and the Railroad was a non-diverse party. Assuming however, that the Railroad was not indispensable, as seems implicit in the district court's ruling, the Railroad could have remained a party without depriving the court of jurisdiction, even though it was non-diverse, if it had been found to have a right to intervene under 24(a). *See General Ins. Co. of Amer. v. Hercules Constr. Co.*, 385 F.2d 13, 18 (8th Cir. 1967); *see also* 7, 7A Wright and Miller, Federal Practice and Procedure §§ 1610, 1917 (1972).

4. Rule 21 of the Federal Rules of Civil Procedure may be invoked to retain subject matter jurisdiction by dropping a non-diverse party who is not indispensable, at any stage of the action. *See Great Am. Ins. Co. v. Louis Lesser Enterprises, Inc.*, 353 F.2d 997, 1001 (8th Cir. 1965) (nominal parties); *Reynolds v. Wabash R.R. Co.*, 236 F.2d 387 (8th Cir. 1956); *Ralli-Co-*

*ney, Inc. v. Gates*, 528 F.2d 572, 575–76 (5th Cir. 1976). *See generally* 7 Wright and Miller, *supra* § 1685. It also provides that "any claim against a party may be severed and proceeded with separately."

5. The factors listed in Rule 19(b) are: (1) the extent to which a judgment rendered in the person's absence might be prejudicial to him or those already parties; (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; (3) whether a judgment rendered in the person's absence will be adequate; (4) whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

6. The issue of indispensability of parties may be raised at any stage of the proceedings, and as late as on appeal. *See Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S.

the record, we conclude that the Railroad's absence did not divest the district court of subject matter jurisdiction. Because the issue was raised when it was, we are able to evaluate the actual prejudice to the Railroad's interest from entry of judgment in its absence, rather than the theoretical possibility of prejudice existent at commencement of the suit. *See Provident Tradesmens Bank & Trust Co. v. Patterson, supra,* at 110–11, 88 S.Ct. 733. There is no doubt as to the theoretical possibility of prejudice to the Railroad. Although it is technically not bound by a decision made in its absence, and an accounting was ordered without entry of an order quieting title, the decision as to Fetzer's right to receive royalty payments may, in a practical sense, affect the Railroad's royalty claims as Fetzer's lessor. *See Schutten v. Shell Oil Co.,* 421 F.2d 869, 874 (5th Cir. 1970); *Reese v. Skelly Oil Co.* 53 F.R.D. 548 (S.D.Miss.1971). However, it is significant that the Railroad does not protest its dismissal from the proceeding; it has not appealed. One explanation for the Railroad's failure to appeal may be that, as the district court found, the Railroad's and Fetzer's interests are so closely aligned that Fetzer adequately represented the Railroad's interests. We acknowledge, however, that the Railroad may have reasoned that it would not be prejudiced since the judgment was in Fetzer's favor and therefore the Railroad's claim to the mineral rights and to royalties under the lease was not adversely affected. Nonetheless, the Railroad chose not to appeal, and we are not compelled to scrutinize its interests as closely as we would be had it appealed its dismissal. Second, Bodcaw raises the possibility of inconsistent judgments by suggest-

ing that it may relitigate its claim to title against the Railroad in state court. Assuming that Bodcaw ultimately loses, and on remand the district court affirms its judgment in plaintiffs' favor, Bodcaw will undoubtedly meet stiff legal resistance in the form of possible pleas of estoppel or collateral estoppel in state court. However, we need not investigate such murky areas now; suffice it to say that this did not appear to bother Bodcaw until initial judgment had been entered, and it is somewhat late to be concerned with this possibility now. *See Provident Tradesmens Bank & Trust Co. v. Patterson, supra,* 390 U.S. at 110, 88 S.Ct. 733.

A more significant interest to consider under Rule 19(b) is the public's interest in complete and efficient settlement of controversies. As strong as this interest may be, we cannot ignore the fact that the present proceedings have been in progress for over four years; under the circumstances, we conclude that the interests of justice and sound judicial administration are best served by proceeding without the Railroad. Finally, in evaluating the plaintiffs' interest in an adequate forum, and on appeal, their strong interest in preservation of their judgment, we feel compelled to find that the alternative of a state forum is less than adequate.

In view of the discussion to follow and our remand to the district court, we recognize that the court may enter a different judgment, which could be adverse to the Railroad's interest. This possibility does not alter our conclusion, however, since the Railroad, although not a party at the time final judgment was entered, did have an

---

102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968); Fed.R. Civ.P. 12(h)(2), 19, 21; 7 Wright and Miller, *supra* § 1609, at 88. While it appears illogical to say that the Railroad may have been indispensable at the outset, but was not so after trial, under Rule 19(b) the court could, in equity and good conscience, properly arrive at differing conclusions after consideration of the factors listed in Rule 19(b). In *Provident Bank* the Court stated: "When a case has reached the appeal stage the matter is more complex. The judgment appealed from may not in fact affect the interest of any outsider even though there

existed, before trial, a possibility that a judgment affecting his interest would be rendered." 390 U.S. at 110–11, 88 S.Ct. at 738. This language seems to reject the statement in *Calcote v. Texas Pac. & Oil Co.,* 157 F.2d 216, 218 (5th Cir.), *cert. denied,* 329 U.S. 782, 67 S.Ct. 205, 91 L.Ed. 671 (1946), relied upon by Bodcaw that the true test of indispensability of parties "is the situation existing before and not after entry of the final judgment," at least when the issue is not raised until after trial. *Calcote* is criticized in 7 Wright and Miller, *supra* § 1609, at 92–93.

opportunity to plead and prove its interest. *See Provident Tradesmens Bank & Trust Co. v. Patterson, supra* at 111, 88 S.Ct. 733. It was a party until the eleventh hour, submitted evidence and briefs, and was present in a meaningful sense through the trial. Furthermore, because its interest is so closely aligned with that of the plaintiffs, they could adequately represent it, as the trial court found that they did. *See Toney v. White,* 476 F.2d 203, 207 (5th Cir.), *modified en banc,* 488 F.2d 310 (5 Cir. 1973). While the potential for relitigation may be somewhat greater if the decision below is adverse to the Railroad's interests, we do not see any reason to throw away four years of litigation, just because the whole controversy may theoretically not be finally settled by the judgment. *See Provident Tradesmens Bank & Trust Co. v. Patterson, supra* 390 U.S. at 116, 88 S.Ct. 733.

In sum, there has been protracted litigation in the federal forum, the Railroad has been present throughout the trial proceedings, and Bodcaw's objection came after trial and initial entry of judgment and three years after commencement of the proceedings. Under these circumstances, we conclude that dismissal for lack of an indispensable party who destroys diversity of citizenship was not required by Rule 19(b) and that the district court did not err in dismissing the Railroad, thus preserving subject matter jurisdiction.

*Construction of the Deeds.*

The district court's judgment on the merits depended upon its construction of two deeds, in which Bodcaw Lumber Company, predecessor of Bodcaw Company, was the grantor and the Louisiana and Arkansas Railroad, predecessor of the Louisiana and

Arkansas Railway Company, was the grantee.

In 1898 Bodcaw Lumber Company "sold, transferred and delivered," to Louisiana and Arkansas Railroad, "all its right, title, property and interest in and to the main line of Railroad. . . . " The deed also mentions branch lines, spurs, side tracks, switches, a water tank, pumping equipment, section houses and sand houses, all right of way and franchises "occupied by and belonging to said line of railroad," rolling stock, hand cars, push cars, tools and implements and track fixtures. Its habendum clause recites in part: "TO HAVE AND TO HOLD said railroad property, right of way and equipment. . . . " This deed, although dated 1898, was not acknowledged or recorded until 1902.

Another deed, between the same parties, executed and recorded in 1899, recited that Bodcaw Lumber Company does "grant, bargain, sell and convey" unto the Louisiana and Arkansas Railroad "a right of way . . . through the following described lands. . . . " Its habendum clause recites in part: "To have and to hold the above granted premises. . . . "

■ The trial court held that the 1899 instrument was intended to give the Railroad an easement only.[7] However, it held that the 1898 deed, which the court referred to as the 1902 deed, apparently because this was the year in which it was acknowledged and recorded, conveyed the entire underlying estate to the Railroad in fee simple. The district court concluded therefore, that the Railroad was able to grant a valid oil and gas lease to Fetzer and it ordered Cities Service and Louisiana-Nevada to account for the oil and gas production proceeds due to Fetzer and Robinson.

---

**7.** Although the term right of way has a "twofold signification," *Joy v. St. Louis,* 138 U.S. 1, 44, 11 S.Ct. 243, 34 L.Ed. 843 (1891); *New Mexico v. United States Trust Co.,* 172 U.S. 171, 182, 19 S.Ct. 128, 43 L.Ed. 407 (1898); *Abbott v. Pearson,* 257 Ark. 694, 698, 520 S.W.2d 204, 207 (1975), *quoting Quinn v. Pere Marquette Ry. Co.,* 256 Mich. 143, 150, 239 N.W. 376, 379 (1931), when a deed purports to grant a right of way to a railroad company, it is well settled in Arkansas that it generally does

not convey a fee, but an easement. *See, e. g., El Dorado & Wesson Ry. Co. v. Smith,* 233 Ark. 298, 344 S.W.2d 343 (1961); *Chicago, R. I. & P. R. Co. v. Olson,* 222 Ark. 828, 262 S.W.2d 882 (1953); *Daugherty v. Helena & Northwestern Ry.,* 221 Ark. 101, 252 S.W.2d 546 (1952); *St. Louis-San Francisco Ry. Co. v. White,* 199 Ark. 56, 132 S.W.2d 807 (1939); *Graham v. St. Louis, I. M. & S. Ry. Co.,* 69 Ark. 562, 65 S.W. 1048 (1901), 66 S.W. 344 (1902) (Bunn, C. J., dissenting).

In its opinion, the district court noted that the 1898 deed was recorded in the land records and must therefore have been intended to convey an interest in land. It found that Bodcaw Lumber Company did not refer to the railroad right of way in subsequent transfers which purported to convey all of its property, and that the Railroad did not indicate less than full ownership of the land on which the railroad was constructed in subsequent conveyances of its property. Because gas and oil were not recognized to be present and were not greatly valued at the time, the court concluded that neither party considered transfer of title in fee to the land underlying the railroad tracks to be of great importance. Taking note of the identical ownership and management of the Railroad and Bodcaw Lumber Company at the time that the two deeds were executed, the court found support for its holding in the Railway Company's 1902 articles of incorporation. These articles indicated that the corporation's capital stock was to be used to acquire the existing Louisiana and Arkansas Railroad and all its property, real and personal.

Bodcaw contends that the district court erred by assuming that because the 1898 deed was acknowledged and recorded in 1902, the 1899 conveyance of right of way was prior to conveyance of the property described in the 1898 deed. Throughout its opinion, the district court refers to the deed dated 1898 as the "1902 deed." The appellees concede that a deed takes effect on the date of its delivery under Arkansas law, see *Wilson v. McDaniel,* 247 Ark. 1036, 1038, 449 S.W.2d 944, 946 (1970); *Deniston*

*v. Phillips,* 121 Ark. 550, 555, 181 S.W. 911, 913 (1916), but urge that any confusion as to the effective date of the 1898 deed was inconsequential and had no bearing on the district court's decision. We are less certain. The court's first opinion referred to the "prior express grant of right of way in 1899," and in its final opinion it referred to the "right of way previously conveyed." Assuming, as the district court apparently did, that the 1899 grant of the right of way was the first conveyance, a subsequent conveyance of the real property over which the right of way extended appears quite logical. However, if the converse is true, and title to the land underlying the right of way was conveyed in 1898, the 1899 right of way deed appears to be superfluous. Indeed, as Bodcaw argues, it creates serious doubt as to whether the parties intended to convey complete title in fee in 1898.[8] The district court may have given a good deal of weight to this erroneous chronology of events in construing the deeds, and it could have affected the court's evaluation of other evidence of the parties' intent. We cannot assume that this error did not influence the court's ultimate judgment.

The other factors considered by the court do not, at least at this time, give us sufficient guidance to review the correctness of its holding. It gave considerable weight to the parties' intent as it is expressed in the Railway Company's 1902 articles of incorporation, but those articles indicate that the Railway Company believed it had already acquired the existing logging railroad by 1902.[9] The earlier 1898 articles of incorpo-

8. A deed is presumed to have been delivered on the day of its date, even though it appears to have been acknowledged at a subsequent date. *Smith v. Scarbrough,* 61 Ark. 104, 107, 32 S.W. 382, 383 (1895). Since the 1902 articles of incorporation indicate that the existing logging railroad had already been acquired, the parties evidently felt that the transfer of ownership was complete prior to 1902. Furthermore, since the district court found the ownership and management of the two companies to be virtually identical, and William Buchanan, the controlling shareholder of each company, signed both deeds, it is logical to assume that

delivery did, as is the presumption, take place upon execution.

9. The trial court relied upon the Railway Company's stated intent to use its capital stock to acquire

the whole of the present existing Louisiana & Arkansas Railroad and all the property thereof, with all its privileges, rights, franchises, real estate and other property, and its right of way, motive power, road bed, rolling stock, water stations, depot grounds, and all other property, both real and personal. . .

However, the articles also state that "under which said articles [the 1898 articles] the then

ration would seem to be more relevant to the question of what the Railway Company intended to acquire in 1898. However, those articles refer to the Railroad's intent to acquire an "existing railroad," and the term railroad does not have a settled or invariable meaning. 1 Elliott, The Law of Railroads § 4 (2d ed. 1907).[10]

The language used in the 1898 deed is of little assistance in determining the parties' intent. The term "main line" might be construed broadly enough to include the land underlying the tracks, but it does not clearly do so, and the term "right of way," when used in a conveyance to a railroad company, does not generally convey title in fee under Arkansas law. See cases cited note 7 supra.

 The operative words of conveyance, granting clause and habendum clause do not conform to conventional usage in conveyances of fee simple title to land or to the Lumber Company's language in other conveyances of title to land which were made a part of the record.[11] The 1898 deed does not mention land or realty and does not contain a full description of land, aside from reference to points at which the lines and grading begin and end. Although this

reference could provide a key to identify any interest in land conveyed, see Gibson v. Pickett, 256 Ark. 1035, 1045–46, 512 S.W.2d 532, 539 (1974), lack of clarity in the description of land may indicate conveyance of an easement rather than a full possessory interest. See II American Law of Property § 8.21 (A. James Casner, ed. 1952); St. Louis-San Francisco Ry. Co. v. Logue, 216 Ark. 64, 67, 224 S.W.2d 42, 44 (1949); Fulcher v. Dierks Lumber & Coal Co., 164 Ark. 261, 271, 261 S.W. 645, 648 (1924).[12]

The fundamental issue here is the intent of the parties. This is basically a finding of fact to be assessed from all of the evidence. As an appellate court, we think proper judicial policy requires that we refrain from full review of the merits until the district court has made its finding without consideration of an erroneous premise. Our observations here are in no way to be construed by the district court or the parties as an indication that the judgment for the plaintiffs was incorrect. We simply refrain from reviewing that issue at this time. The court's finding on remand can be reviewed here and can, of course, be set aside only if it is clearly erroneous.

unincorporated railroad . . . was acquired."

10. The 1898 articles state a corporate purpose to acquire, construct, and operate "a railroad. . . . ." Capital stock was to be used to acquire "the existing railroad [reference being to the logging railroad then in operation] . . . with the right of way, motive power and other property and appurtenances of every kind and description. . . . ." In construing statutes specially assessing or taking railroad property, see, e. g., Chamberlain v. Walter, 60 F. 788 (C.C.D.S.C.1894); St. Louis Southwestern Ry. Co. v. Grayson, 72 Ark. 119, 78 S.W. 777 (1904), and in deciding what property was purchased at a foreclosure sale of railroad property, Knevals v. Florida Cent. & P. R. Co., 66 F. 224 (5th Cir. 1894), cert. denied, 159 U.S. 257, 15 S.Ct. 1040, 40 L.Ed. 147 (1895), courts have treated the term railroad as a general and inclusive one, encompassing real and personal property, easements, and choses in action. The 1898 articles also appear to use the term broadly, and since land may pass as appurtenant to a railroad, id. at 231, the 1898 articles could be construed to state a broad intent to acquire the land in fee.

11. This may be explained by the fact that railroad property was classified at times as realty and at times as personalty. See 1 Elliott, The Law of Railroads § 389 (2d ed. 1907).

12. The width of the strip conveyed is not given, nor the county or township or section numbers. Bodcaw Lumber Company knew how to describe real property in deeds according to the conventional manner; they did so in the 1895 deed which conveyed the section 14 strip to Taylor. Indeed, in all conveyances made a part of the record, the land was precisely described and traditional words for the conveyance of realty—grant, sell, bargain and convey—were used. A reasonable argument can be made that the sketchy description of realty in the 1898 deed suggests that the 1899 deed, which fully describes the easement granted, may have been intended to supplement or cure any defect in the 1898 deed. The fact that the 1898 deed was recorded in real estate records does not necessarily indicate that conveyance of a full possessory interest in land was intended. Under Arkansas law an easement is an interest in land. Fulcher v. Dierks Lumber & Coal Co., 164 Ark. 261, 261 S.W. 645, 648 (1924).

We vacate the judgment and remand for reconsideration in light of the principles herein discussed; in doing so the district court in its discretion may provide the parties an opportunity to supplement the record and make further argument.

IT IS SO ORDERED.