13 F.Supp.2d 960 (1998)
William STODGHILL, Plaintiff,
v.
SERVICE EMPLOYEES' INT'L UNION, LOCAL 50, AFL-CIO, Defendant.
No. 4:97CV506 RWS.
United States District Court, E.D. Missouri, Eastern Division.
May 29, 1998.
*961 *962 Leonard J. Frankel, Vines and Frankel, Clayton, MO, for William Stodghill, Plaintiff.
George O. Suggs, Wilburn and Suggs, St. Louis, MO, for Local 50 Service Employees Int'l Union, AFL-CIO, Defendant.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
SIPPEL, District Judge.
This matter is before the Court after a bench trial. The Court has jurisdiction over this case pursuant to 29 U.S.C. § 412.
Plaintiff William Stodghill ("Stodghill"), former president of Service Employees' Int'l Union, Local 50, AFL-CIO, ("Local 50") sued the union complaining of disciplinary actions taken against him by the union. He seeks, among other things, reinstatement in the union. Defendant Local 50 represents its members in collective bargaining with *963 their employers. A large number of Local 50's members are custodial workers.
At the time of the trial, three Counts remained in the suit.[1] Stodghill's Complaint alleges a violation of the Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 411 and seeks injunctive relief from Local 50's decision to expel him from the union (Count I). Stodghill also invokes the Court's supplemental jurisdiction, under 28 U.S.C. § 1367, and seeks damages derived from Local 50's alleged breach of a covenant to exhaust internal union remedies when the union filed a lawsuit against Stodghill on April 12, 1996 (Count II); and specific performance and damages concerning Local 50's failure to provide Stodghill with the benefits of president emeritus status (Count III).
Local 50 counterclaims for damages arising out of Stodghill's breach of contractual and fiduciary duties based on his alleged unauthorized expenditures of union funds (Counts I and II) and Stodghill's alleged wrongful titling and retainment of a car owned by the union (Count III and IV).

Background
Stodghill was president of Local 50 for over seventeen years. On August 16, 1995, Stodghill narrowly lost a bid for reelection. He resigned from office on September 10, 1995 shortly before his term expired.
On April 1, 1996, two members of Local 50, Andrew Stovall and Mead Dowling (hereinafter the "Charging Parties"), filed a formal complaint against Stodghill with the union. The complaint alleged that Stodghill violated the International Union's and Local 50's constitutions and bylaws by: 1) using the funds of the union for personal purposes not authorized by the membership or the constitution and bylaws of the union, and 2) failing to keep proper financial records for the fiscal years 1993-94 and 1994-95. This complaint initiated the process by which the union held an internal trial of the charges against Stodghill.
A short time later, on April 12, 1996, Local 50 filed a suit in federal court, SEIU v. Stodghill, Cause No. 4:96CV714, alleging, inter alia, that Stodghill had improperly expended assets of the union for his personal benefit.
Local 50 convened a Trial Board on June 12, 1996 to hear the union charges against Stodghill. The union's Executive Board acted as the Trial Board.[2] Stodghill attended the hearing but walked out after complaining that the union failed to provide him with written specific charges against him and failed to provide him with any documents or audits specifically directed toward any alleged misconduct. The Trial Board continued the hearing after Stodghill's departure and found him guilty as charged, assessing a penalty of expulsion without the right of reinstatement.
Eight days later, on June 20, 1996, Stodghill filed a Verified Counter-Complaint for Permanent Injunction, Preliminary Injunction and Temporary Restraining Order in the pending federal case brought by the union. The counter-complaint sought to enjoin the union from expelling Stodghill and to enjoin the Trial Board to reconvene the hearing. It also sought an order to exclude Local 50's new president, Donald Rudd, and the new financial secretary-treasurer, Richard O'Donnell, from sitting on the reconvened Trial Board. The counter-complaint also asked that the union provide an impartial trial panel. The Honorable Carol E. Jackson denied as moot the motion for a temporary restraining order on June 24, 1996, because Stodghill and Local 50 had reached an agreement to reconvene the Trial Board hearing.[3]
The Trial Board hearing resumed on July 17, 1996. At the conclusion of the hearing, the Trial Board again found Stodghill guilty as charged and assessed the penalty of expulsion without the right of reinstatement. Pursuant to the constitution and bylaws of Local 50, Stodghill requested a review of the *964 decision by the entire membership of Local 50. The constitution and bylaws provide that the Trial Board's decision may be overturned by a two-thirds majority vote of the membership.[4] The membership vote on September 9, 1996, upheld the Trial Board's decision.[5]
Stodghill subsequently appealed Local 50's decision to the Service Employees' International Union (the "International"). On June 8, 1997, the International's Executive Board found Stodghill guilty of failure to keep accurate records; expending funds of Local 50 for personal stationary; and placing his name on the title to a car owned by the union. The International's Executive Board modified Stodghill's lifetime expulsion. The International imposed an expulsion period lasting only through September 1, 1999. Stodghill has appealed the International's ruling to the Service Employees International Convention that will be held in 1999.[6]

Local 50's Internal Trial of Stodghill
Stodghill asserts that the union violated his rights to a full and fair hearing pursuant to LMRDA, 29 U.S.C. § 411 because the Trial Board expelled Stodghill without serving him with written specific charges, without giving him a reasonable time to prepare his defense, and failing to afford him a full and fair hearing.
LMRDA, 29 U.S.C. § 411(a)(5) provides that:
No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.
If a court determines that the rights provided by § 411(a)(5) were satisfied, the only question that remains is whether the evidence presented at the union's disciplinary proceeding was sufficient to support a finding of guilt. International Brotherhood of Boilermakers v. Hardeman, 401 U.S. 233, 246, 91 S.Ct. 609, 28 L.Ed.2d 10 (1971). To meet this requirement, the charging parties must provide "some evidence" at the disciplinary hearing to support their charges. Id.

Written Specific Charges and Reasonable Time to Prepare a Defense
In a letter dated March 7, 1996, Richard O'Donnell, as financial secretary-treasurer of the union, asked Stodghill to respond to an audit that uncovered alleged irregularities of Stodghill's expenditures of union funds. O'Donnell invited Stodghill to review the audit and provide an explanation of the questioned expenses. If Stodghill failed to provide appropriate documentation of the questioned expenses, O'Donnell would recommend that the status of president emeritus be denied to Stodghill. Stodghill responded by letter on March 27, 1996, and requested the union to send him a copy of the audit and a list of the expenditures at issue.
On April 15, 1996, the union sent a letter to Stodghill informing him of the charges brought by the Charging Parties. That letter included a copy of the charges, notice that the Executive Board would serve as the Trial Board, and notice that a hearing was set for June 12, 1996. The charges stated:
Pursuant to Article XVI of the International Constitution and Bylaws and Article XIX of the Constitution and Bylaws of Local 50 I am charging Brother William *965 Stodghill with violations of both Constitutions as follows:
1. That Brother Stodghill while President of Local 50 violated Article XII, Section 6(b), Article XVI, Section 1(4 & 5) of the International Constitution and Bylaws and Article XXVIII, Sections 28.04 and 28.05 of the Constitution and Bylaws of Local 50 by failing to keep proper financial records for the fiscal years 1993-94 and 1994-95 and by failing to deliver the same to the new officers of Local 50.
2. That Brother Stodghill while President of Local 50 violated Article XV, Section 15.01 and Section 15.03 and Article XII of the Constitution and Bylaws of Local 50 by using the funds of Local 50 for personal purposes not authorized by the Membership or Constitution and Bylaws of Local 50 as required. The personal expenditures included, but were not limited to, meals, lodging, and entertainment for himself and friends as well as campaign expenditures which were on behalf of Brother Stodghill and his slate.
In a letter to Donald Rudd dated May 30, 1996, Stodghill requested that the union provide him with more specific information regarding the charges against him. He acknowledged that the union had offered to permit him to inspect records and minutes but he also sought a copy of the audit in order to prepare for the hearing. O'Donnell wrote back the next day and informed Stodghill that he could come to the union at any time during business hours to review the records and the audit. Stodghill went to the union headquarters to review the documents.[7] He testified that he was shown to a room that had six or eight boxes on a table. Stodghill testified that when he asked for the documents in question, he was told he could look through the boxes and find them for himself. Stodghill left after only ten or fifteen minutes.
At the trial hearing on June 12, 1996, Stodghill received copies of specific documents, including invoices from Gene Lynn's restaurant and a print shop that reflected alleged improper union expenditures, and the title of the union car used by Stodghill when he was president. Stodghill protested that union did not give him adequate notice of these specific documents to allow him to prepare his defense. Stodghill then left the hearing taking the documents with him.
In order to satisfy the specificity requirements of the LMRDA, § 411(a)(5), the written charges against a union member should contain a "detailed statement of the facts relating to the [incidents] that formed the basis for the disciplinary action." Hardeman, 401 U.S. at 245, 91 S.Ct. 609. The charges sent to Stodghill neither specified the particular financial records that were at issue, or the personal expenditures that were allegedly unauthorized. The union did not identify for Stodghill the specific documents that formed the basis of the charges. Therefore, it is evident that, at the time of the first hearing on June 12, 1996, Local 50 failed to provide Stodghill with specific written charges as required by § 411(a)(5).
On June 14, 1996, however, Stodghill sent a letter to Donald Rudd demanding that the Trial Board be reconvened. The letter stated that Stodghill had reviewed the records that formed the basis of the charges against him and that he was prepared to defend himself against the allegations.[8]
As noted earlier, after Stodghill filed his counter-complaint in the federal lawsuit, the parties agreed to reconvene the Trial Board. On July 17, 1996, the same Trial Board (the Executive Board) continued the hearing of the charges against Stodghill. Thirty-five days had elapsed between the first and second hearings. During that time Stodghill had ample opportunity to review the specific records and documents that formed the basis of the charges. By his own admission, he was prepared to defend himself against the charges. Consequently, the Court finds that, *966 prior to the reconvened hearing on July 17, 1996, the written charges combined with the specific records and documents provided to Stodghill at the first hearing contained sufficient detailed facts to satisfy the "written specific charges" requirement of LMRDA, § 411(a)(5)(A).[9] In addition, the Court finds that Stodghill was given a reasonable time to prepare his defense under LMRDA, § 411(a)(5)(B).

Full and Fair Hearing Requirement
Stodghill asserts that Local 50 failed to afford him a full and fair hearing under LMRDA, § 411(a)(5)(C). This assertion is based on two points: 1) Local 50 refused to allow Stodghill to cross-examine the Charging Parties at the second hearing, and 2) Local 50 failed to appoint an impartial and unbiased Trial Board for the second hearing.
Congress passed the LMRDA to ensure that labor unions act fairly in disciplining their members. Curtis v. Int'l Alliance of Theatrical Stage Employees, 687 F.2d 1024, 1029 (7th Cir.1982) (citing N.L.R.B. v. Allis-Chalmers Mfg. Co., 388 U.S. 175, 194, 87 S.Ct. 2001, 18 L.Ed.2d 1123 (1967)). Yet, it is clear that the congressional intent was to leave the administration of disciplinary proceedings largely to the individual union local. Id. In order to prevail in a suit against his union, "the plaintiff must show that the union's technical failure to follow its rules deprived him of a fair hearing either by severely impairing his ability to prepare and present a defense or by seriously increasing the risk that the decision maker will reach an erroneous determination." Id. at 1030.
Local 50's failure to allow Stodghill to cross-examine the Charging Parties did not severely impair his ability to prepare or present a defense or increase the risk that the Trial Board would reach an erroneous determination. The Charging Parties presented documents at the first hearing and testified about their contents. Stodghill left the first hearing in protest during the testimony of one of the Charging Parties. At the second hearing, the Trial Board Chairman ruled that Stodghill waived his right to cross-examine the Charging Parties because he walked out of the first hearing. However, the Chairman also ruled that Stodghill would be allowed to cross-examine the Charging Parties with the Charging Parties' consent. Both of the Charging Parties declined to be questioned by Stodghill.
While plaintiff has the right to cross-examine pertinent witnesses, this does not mean that plaintiff necessarily has the right to question the person who filed the charges against him. Ritz v. O'Donnell, 566 F.2d 731, 736 (D.C.Cir.1977). If the charging parties present witnesses or other evidence at the proceeding, and the plaintiff is offered both a full opportunity to test the validity of that evidence and to call the charging parties as witnesses, a full and fair hearing is assured. Id. A charging party, however, may not be a pertinent witness when the entire case is proven by written documents. Id.
Stodghill cross-examined the sole witness, aside from the Charging Parties, at the first hearing. The Charging Parties testimony consisted of identifying documents and highlighting their contents to the Trial Board. The Charging Parties had no personal knowledge of the activities underlying Stodghill's questioned expenditures. At the second hearing, although he was not allowed to question the Charging Parties, Stodghill did address the substance of the documents and called four witnesses in his defense. The documents reflected, among other things, Stodghill's frequent expenses incurred at Gene Lynn's restaurant and the title of a car in both the union's and Stodghill's names. Although it is preferred to allow an accused member to cross-examine a charging party who testifies at a trial hearing, the evidence against Stodghill was documentary in nature and the Charging Parties testimony only pointed out expenditures for consideration by the Trial Board. Therefore, Stodghill's inability to cross-examine the Charging Parties did not severely impair his ability to prepare or present a defense or increase the risk that the Trial Board would reach an erroneous determination. See Curtis, 687 F.2d at 1029.
*967 Stodghill's second point of a biased Trial Board has merit. An unbiased finder of fact is fundamental to the full and fair hearing requirement of LMRDA, § 411(a)(5)(C). Myers v. Affiliated Property Craftsmen, 667 F.2d 817, 820 (9th Cir.1982). Since the trial committee members typically consist of members from the same local, it is inevitable that some or all of them will have obtained some knowledge of the events in question outside of the disciplinary hearing. Id. There are limits, however, to the personal knowledge that will be tolerated in members of a trial committee. For example, a witness to the offense in question can not sit on the trial committee. Id. Moreover, where members of a trial board may have a specific bias against the accused member, a full and fair hearing is unattainable.
In particular, it has been held that when an accused member had held a union office and planned to run again, the elected officers and those appointed by them could not be considered impartial or disinterested members of the trial board. Kiepura v. Local 1091, United Steelworkers of America, 358 F.Supp. 987, 993 (N.D.Ill.1973). Similarly, a plaintiff's allegation that several of the trial board members were biased against him because he had fired them in the past was sufficient, if proven, to be a violation of the full and fair hearing requirement. Goodman v. Laborers' Int'l Union, 742 F.2d 780, 784 (3rd Cir.1984). Finally, the right to a fair hearing has been violated when members of a union tribunal that convicted a union member participate as tribunal members on a retrial of the same charges. Rosario v. Amalgamated Ladies' Garment Cutters' Union, 605 F.2d 1228, 1243 (2nd Cir.1979).
In order to prove that Local 50 failed to give him a full and fair hearing, Stodghill must show the specific bias of members of the Trial Board. Yager v. Carey, 910 F.Supp. 704, 720 (D.D.C.1995). Stodghill has met this burden.
Stodghill had been the president of Local 50 and planned to run for reelection in the future. Eight of the Trial Board members were newly elected officers or their appointees who, by their political allegiance alone, could not be considered impartial or disinterested members.[10] Four of the same members had also been fired by Stodghill from their positions as business representatives.[11] Although the union and Stodghill agreed to "reopen" the hearing, and Rudd and O'Donnell were not members of the second Trial Board, the Court finds that Stodghill did not have the benefit of an impartial panel.
In his counter-complaint in federal court, Stodghill asked for Local 50 to reconvene his trial with an impartial board. Yet the Trial Board at the second hearing still contained six members who were political opponents of Stodghill or individuals who had been fired by him. In addition, twenty of the twenty-one Trial Board members at the second hearing sat on the Trial Board which had expelled Stodghill at the first hearing. Even though the second hearing was merely a "reopening" of Stodghill's trial, it can not be denied that a majority of the members had already found him guilty of the charges on June 12, 1996. Stodghill can not waive the bias of the Trial Board since the board members themselves have a duty to disqualify themselves for bias. Goodman, 742 F.2d at 783.
Local 50 asserts that any procedural errors that might have tainted the two hearings by Local 50 were cured by the International union's review of Stodghill's case. Procedural defects may only be cured by a de novo review on appeal. Catlett v. Local 7370 of United Paper Workers Int'l Union, 69 F.3d 254, 259 (8th Cir.1995). A trial de novo entails an independent determination of the merits of the case and is not merely a review of the results of the previous trial. Id. It is clear from a review of the record that the events of the proceeding before the International's Executive Board do not support a conclusion that the International made an independent de novo determination of the merits of the charges based *968 solely on the testimony and evidence presented before it. The International union's review, therefore, did not cure the bias that prevented Stodghill from receiving a full and fair hearing.[12]
In its review of the alleged violation of Local 50's disciplinary process, the Court is not ruling on the guilt or innocence of Stodghill concerning the charges brought by the union. Rather, the only issue before this Court is whether the union violated Stodghill's right to a full and fair hearing. The Court finds that Local 50 violated LMRDA, § 411(a)(5)(C) by failing to appoint an unbiased and impartial Trial Board.[13] Therefore, Stodghill shall be reinstated as a member in Local 50. In addition, this case shall be remanded back to Local 50 and a new hearing shall be afforded to Stodghill before impartial members who did not participate in the original proceedings against Stodghill.

Counterclaim
In its counterclaim, Local 50 seeks actual and punitive damages based on Stodghill's alleged misappropriation of union funds. Had the Trial Board not been biased, the Court would have found that the Charging Parties presented "some evidence" that would support Local 50's expulsion of Stodghill. The "some evidence" standard set by the Supreme Court in Hardeman to uphold a union action, however, does not meet the same standard to award damages in breach of contract or breach of fiduciary duty claim. Local 50 did present evidence of questionable expenses by Stodghill at Gene Lynn's restaurant. The union demonstrated that Stodghill failed to accurately provide backup receipts for several invoices at Gene Lynn's. These facts alone may be sufficient for the union to expel a member. However, the evidence fails to show that any particular expense was more likely than not for non-union activities.
Nor is the Court persuaded that Stodghill's stationery, purchased by the union, was solely used for the personal benefit of Stodghill. While Local 50's evidence at trial regarding Stodghill's expenditures raised suspicions, no particular facts of misappropriation were proven. As a result, based on the evidence presented, damages sought by Local 50 pursuant to its counterclaim are denied.

Failure to Exhaust Internal Remedies
In Count II, Stodghill seeks damages because the union filed a lawsuit against Stodghill on April 12, 1996.[14] Stodghill claims that the union violated a covenant to exhaust internal union remedies before resorting to court action. This claim is without merit.
Local 50 filed the challenged suit alleging various claims, some of which are the counterclaims in the present suit. Stodghill alleges that Local 50's suit against him violated Local 50's Constitution and Bylaws § 19.07 and the International's Constitution and Bylaws Article XXII(A). Section 19.07 provides that:

*969 Subject to the provisions of applicable statutes, every member or officer of this Local Union against whom charges have been preferred and disciplinary action taken agrees, as a condition of membership or affiliation, to exhaust all remedies provided for in the Constitution and Bylaws of the International Union and in this Constitution, and further agrees not to file or prosecute any action in any court, tribunal, or other agency until those remedies have been exhausted.
This provision applies only to members or officers against whom charges have been preferred and disciplinary action taken. Clearly, this section does not bar the union from filing an action against such a member or officer. Local 50's suit filed on April 12, 1996, did not violate this section of the local's constitution and bylaws.
The International's Constitution and Bylaws Article XXII(A) states that:
Subject to applicable law, no member, Local Union or affiliated body shall bring any action against the International Union or any other Local Union or affiliated body or any officer thereof, with respect to any matter arising out of the affairs of the International Union or its Local Unions or affiliated bodies unless he or she has exhausted all procedures available under this Constitution and laws promulgated thereunder. Any member, or Local Union or affiliated body, filing suit in violation of this provision may, in addition to other penalties, be ordered to reimburse the organization or officers sued for the costs and attorneys' fees expended, or a portion thereof.
The pertinent provision of this article is that the local union may not sue an officer of the union before exhausting internal remedies. Stodghill alleges that Local 50's suit violated this provision because 1) the suit involved the activities of Stodghill while he was an officer of the union, and 2) when the suit was filed Stodghill held the position of president emeritus and was therefore an officer of the union protected by Article XXII(A).
Neither of these arguments are sound. The text of this provision does not protect former officers from union lawsuits based on activities that occurred during the former officer's tenure.
As for the second basis for the claim, Stodghill was never awarded the status of president emeritus. Even assuming arguendo that Stodghill held that title, he was not an officer of the union. An officer of a union is defined in 29 U.S.C. § 402(n) as "any constitutional officer, any person authorized to perform the function of president, vice president, secretary, treasurer, or other executive functions of a labor organization, and any member of its executive board or similar governing body." Section 402(q) defines an officer as including "elected officials and key administrative personnel, whether elected or appointed (such as business agents, heads of departments or major units, and organizers who exercise substantial independent authority). ..."
The provisions of Local 50's Resolution on Retirement of Presidents establishes that the status of president emeritus is conferred upon retired presidents as an appreciation of their years of service. When granted, the status provides certain benefits to the retired president but does not confer any power, position of authority, or appointment to the executive board or similar governing body. The Court finds that Stodghill was not an officer of the union at the time Local 50 filed suit even if he had held the title of president emeritus. Therefore, Local 50 did not violate Article XXII(A). Accordingly, Stodghill can not recover damages because the union filed a lawsuit against him on April 12, 1996.

President Emeritus Status
Finally, Stodghill seeks damages for Local 50's failure to extend to him the benefits of president emeritus status. Those benefits include two years of severance pay, lifetime health insurance, use of office space at the union's offices, and the continued use of any automobile that was provided for the president's use during his term in office. The Resolution on Retirement of Presidents granted the position of president emeritus status and states that "any President of the union who serves at least ten (10) consecutive years and leaves office under honorable circumstances shall receive upon retirement as appreciation for those years of service" the benefits mentioned.
*970 Local 50 has refused to confer these benefits upon Stodghill for two reasons 1) the Executive Board decided on April 10, 1996 that Stodghill left his office dishonorably due to the questioned expenditures discussed in this case, and 2) since Stodghill intended to run for reelection to regain the presidency he was not "retired" as necessitated by the Resolution.
Under Missouri law the Court must enforce a contract as written and according to the plain meaning of the words in the contract when the contract is clear and unambiguous. Farmland Industries, Inc. v. Frazier-Parrott Commodities, 111 F.3d 588, 590 (8th Cir.1997). The Court finds that the plain language of Local 50's Resolution on Retirement of Presidents mandates that the benefits of the president emeritus status shall only be conferred upon retirement. Stodghill has pursued reelection to the office of the president of Local 50. Stodghill's active pursuit of elective union office is the best evidence that he is not retired. Therefore, Stodghill can not recover damages for Local 50's failure to confer upon him the status of president emeritus.
Local 50 counterclaims for damages based on Stodghill's continued use of the union's 1995 Aurora automobile after his resignation from office. The union had demanded that Stodghill return the vehicle. Stodghill asserted he was entitled to use the car as a benefit of his president emeritus status. Evidence at trial demonstrated that although the car was the property of the union, the title of the car was recorded in the union's and Stodghill's name. When the union refused to renew the tags on the vehicle, Stodghill filed an application for a duplicate title to be issued to him, claiming that the original title was lost. Stodghill also requested that the address on the duplicate title be changed to his home address.
Since, however, Stodghill had a good faith belief that he was entitled to the use of the car, the Court will not award Local 50 damages for Stodghill's refusal to return the car.
In light of the Court's finding that Stodghill is not entitled to the benefits of president emeritus status, the Court directs Stodghill to return the car to the union forthwith and execute any documents necessary to divest his interest in the car.

Attorneys' Fees
A federal court may award counsel fees to a successful party in litigation concerning a union dispute when his opponent has acted "in bad faith, vexatiously, wantonly, or for oppressive reasons." Hall v. Cole, 412 U.S. 1, 5, 93 S.Ct. 1943, 36 L.Ed.2d 702(1973). Since this type of fee shifting is punitive in nature, the essential element in triggering the award of fees is the existence of bad faith on the part of the unsuccessful litigant. Id.
In addition, fee shifting may be appropriate when the plaintiff's successful litigation confers a substantial benefit on members of an ascertainable class and the shifting of fees spreads the cost to all the members of the class. Id. at 6, 93 S.Ct. 1943. In the present case, for example, if Stodghill's successful litigation gave a substantial benefit to all the other members of Local 50, it would be just to make Local 50 pay Stodghill's council fees. Then the union members who benefit from Stodghill's suit will indirectly pay for that benefit through the union's use of dues to pay Stodghill's attorneys' fees.
Both Local 50 and Stodghill pray for attorneys' fees. The Court, however, finds that neither party acted in bad faith, vexatiously, wantonly, or for oppressive reasons that merit the award of attorneys' fees to the opposing side.
Nor does the Court find that Stodghill's efforts conferred a substantial benefit upon the members at large of Local 50. Consequently, the Court will deny the award of attorneys' fees to either party.

Conclusion
The LMRDA was not designed by Congress to permit courts to interfere with the internal governance of a union. Gurton v. Arons, 339 F.2d 371, 376 (2nd Cir.1964). Rather, the LMRDA was enacted to guard against the unjust exercise of union authority in disciplining its members by affording union members certain minimal procedural safeguards. Chief among these safeguards is the right to be heard by an impartial trial *971 body. Courts are very reluctant to intrude upon internal union disciplinary actions except to uphold these minimal standards. Hardeman, 401 U.S. at 242-44, 91 S.Ct. 609.
It is with great reluctance that this Court finds that Local 50's decision to discipline William Stodghill must be set aside as a result of a biased trial board. But when the trial board is dominated by political opponents and those who had been terminated from their union positions by Stodghill, it is more than the LMRDA will tolerate, especially when the union can draw upon others not previously connected with the case in order to assemble an unbiased tribunal.
Accordingly,
IT IS HEREBY ORDERED, ADJUDGED and DECREED that Plaintiff William Stodghill shall be reinstated as a member in Local 50.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that Local 50 shall afford Stodghill a new trial hearing of the union's charges before impartial union members who did not participate in the original proceedings against Stodghill.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that all other relief prayed for by Plaintiff Stodghill is DENIED.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that Plaintiff Stodghill shall return the 1995 Aurora to the union forthwith and execute any documents necessary to divest his interest in the car.
IT IS FURTHER ORDERED, ADJUDGED and DECREED that all other relief sought by Defendant Service Employees' Int'l Union, Local 50, AFL-CIO is DENIED.
An appropriate judgment will accompany these findings of fact and conclusions of law.
NOTES
[1] Plaintiff dismissed Count IV on the first day of the trial.
[2] Per Article XIX, § 19.02 of the Constitution and Bylaws of Local 50. That section provides that "[t]he Executive Board shall act as or appoint the Trial Board, except that where the member charged or preferring such charges is a member of such Board, the Executive Board shall appoint a disinterested member as a substitute."
[3] The federal case was eventually dismissed on January 2, 1997, for lack of subject matter jurisdiction.
[4] Article XIX, § 19.03 provides that "... [a] two-thirds (2/3) vote of the general membership present shall be required in order to overrule the decision of the Executive [Trial] Board. The members of the Executive [Trial] Board shall have a voice but no vote in connection with appeals."
[5] Stodghill complains that Local 50 unfairly influenced the out come by denying members of the retired members club the right to vote on the Trial Board's decision. Stodghill testified, however, that even if they had been allowed to vote it would not have influenced the outcome.
[6] Local 50 asserts that the present case is premature because Stodghill must first exhaust his appeal to the Convention before bringing suit in federal court. LMRDA, 29 U.S.C. § 411(a)(4) provides in relevant part that a union "member may be required to exhaust reasonable hearing procedures (but not to exceed a four-month lapse of time) within [the union], before instituting legal or administrative proceedings...." Since Stodghill's appeal to the Convention will not take place within a four month period from the disciplinary action taken against him, he is free to pursue his claim in court.
[7] Stodghill testified at trial that he went to inspect the documents in May of 1996. However, the dates of the letters indicated that he went to the union to review the records in the first few days of June, 1996.
[8] Stodghill's letter reads in pertinent part: "I have now reviewed the records which were provided to me on June 12th, and I am now prepared to defend myself. I, therefore, demand that the Board resume the hearing upon reasonable notice to me. I look forward to defending myself against these allegations."
[9] The charges must be "specific enough to inform the accused member of the offense that he has allegedly committed." Hardeman, 401 U.S. at 245, 91 S.Ct. 609 (quoting Senator McClellan's testimony at the Labor-Management Reform Legislation, Hearings before a Joint Subcommittee of the House Committee on Education and Labor, 86th Cong., 1st Sess., pt. 5, p. 2285).
[10] These members are, Donald Rudd, Richard O'Donnell, Jim Cook, Willie Brown, Sheila Powell, Warner Williams, Tom Hubbard and Veronica Washington. Rudd and O'Donnell recused themselves from the second hearing.
[11] Rudd, O'Donnell, Powell, and Williams.
[12] Local 50 also asserts in its post-trial brief, for the first time, that the International union is an indispensable party who was not joined by Stodghill. The issue of whether a party is indispensable may be raised at any stage of the proceeding, even as late as the appeal. Fetzer v. Cities Service Oil Co., 572 F.2d 1250, 1254 n. 6 (8th Cir.1978). But, a motion to dismiss for failure to join an indispensable party should be made early in the proceedings and a court should, in equity and good conscience, consider the timing of the motion, and the reasons for delay in weighing the prejudice to the moving party. Ilan-Gat Engineers, Ltd. v. Antigua Int'l Bank, 659 F.2d 234, 242 (D.C.Cir.1981). Local 50 does not offer any reason why it delayed to raise this issue long ago with the Court. Local 50's delay is inexcusable and any prejudice to Local 50 due to the absence of the International union is caused by their own inaction. The International union, however, will not be prejudiced by the Court's decision. Stodghill has not sought damages from the International union. Nor has Stodghill challenged the validity of the International's constitution or bylaws or alleged that the International has violated same. The International union is, therefore, not an indispensable party in this suit. See Krulikowsky v. Metro. Dist. Council, 212 F.Supp. 338, 341 (E.D.Pa.1962).
[13] Local 50 suggests that Stodghill should not be granted the equitable relief of reinstatement since he has unclean hands. Stodghill did meet and provide information to five Trial Board members between the hearings. Although this action taints Stodghill's argument of the improper bias on the part of Trial Board members, it does not negate Local 50's duty to appoint an impartial Trial Board.
[14] SEIU v. Stodghill, Cause No. 4:96CV714 (E.D.Mo.1997).